**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Carol Jean AXTMAN,**
**Defendant-Appellant.**

**Nos. 78–5040, 78–5041.**

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1979.

P. Bruce Kirwan, Federal Public Defender, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., James E. Fagan, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

Carol Jean Axtman was convicted on four counts of violating 18 U.S.C. § 2314.[1] We affirm.

According to the prosecution, Axtman opened savings accounts under aliases at several banks in Atlanta, Georgia, and deposited unauthorized checks in these accounts. These checks were not honored by the drawee bank, but prior to their return to Atlanta, Axtman had withdrawn funds from the accounts.

During investigation of this apparent violation of federal law, an FBI agent prepared and displayed to employees of the various Atlanta banks a photographic display containing a picture of Axtman. At trial Axtman's attorney sought to suppress the identification testimony of these employees as tainted by the impermissibly suggestive nature of the photo display. The trial judge held a hearing outside the presence of the jury, and ruled that the identification

---

1. 18 U.S.C. § 2314 provides in pertinent part: Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited;

shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

testimony was admissible.[2] During trial the display was also admitted into evidence.[3]

■ Axtman raises two arguments for reversal. First, she asserts that the admission of identification testimony placed her upon the horns of a dilemma. She contends that she either had to attack the credibility of the identifications by presenting to the jury the suggestiveness of the photo and run the risk of the jury inferring prior criminal conduct from the very characteristic that made the photo suggestive, or had to forgo this line of cross-examination, diminishing her right of confrontation.[4] She claims that putting her to this choice violates due process, and urges that this court should construct a *per se* rule that if a photo suggestive of criminal conduct is employed during an investigation, identification testimony possibly affected by the photo must be excluded. We find this argument unavailing.

Little would be served by adopting the result urged by Axtman. Evidence determined by the trial judge to be reliable would be excluded from the jury solely in order to deter perceived police misconduct. The Axtman result would effectively vitiate the holding of *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), in an indeterminate number of cases,[5] and would import into this area of the law a rigidity courts have eschewed. Also, a *per se* rule would foreclose any evaluation of the actual prejudice suffered by defendant balanced against the government's need to use the photo during the investigation. This refusal to evaluate the relative detriments arising from a particular course of conduct is better reserved for activities of a more egregious sort than that illustrated by the present case.[6] Perhaps the FBI should have obtained a photograph without any indicia of criminal conduct prior to presenting the photo display to the bank employees. We cannot expect to anticipate, however, the myriad exigencies under which

**2.** The court apparently concluded, under the totality of the circumstances analysis of *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), that although the display may have been suggestive, the identifications were in fact reliable. Axtman does not attack this determination on appeal.

**3.** The display consisted of seven photos of white females in the classic full-face-profile setting of a mug shot. Six of the photos, including Axtman's, reveal identification tags positioned around the subjects' necks, and two contain notations on the reverse side of police information concerning the subjects. The tags were concealed by tape or strips of white paper stapled across the front of each picture when admitted into evidence. There is no indication on the record that anyone was aware of the notations on the backs of two of the pictures. Only Axtman's photograph showed her against a height backdrop; the other subjects were pictured against nondescript surfaces.

**4.** Counsel for appellant styles this quandary, the Axtman dilemma. At the *Manson* hearing, counsel articulated the problem in the following manner:

Mr. Kirwan: Yes, Your Honor.

Your Honor, there is one problem that I have, and I don't want to put anymore worms in the can than we might have now, and that is the problem. Of course, I feel I have to cross examine each witness as to the

use of Government Exhibit No. 5 [the photo display].

Your Honor, I feel that number five is going to have to be introduced into evidence for the jury's consideration, and I'm concerned that that backdrop is such that it will indicate to this jury that she has been arrested or in fact convicted of another crime, and it puts me between a rock and a hard place as to—

The Court: It sure does.

Mr. Kirwan: —as to my ability to cross examine on something about this issue, or whether to go ahead and fall back on the hearing that we have had and leave that issue for appellate court, if it becomes necessary, so I'm really in a dilemma as to what to do in this case, and I'm not really asking the Court.

**5.** In *Manson* the Supreme Court stated that reliability is the crux of any analysis of identification testimony. Under the Axtman theory the judge would be foreclosed from evaluation of reliability once the court detected the possibility that the jury could infer prior criminal activity from revelation of the identification process.

**6.** Unlike, for example, police violations of the fourth amendment, the investigative use of this photo does not directly infringe any constitutional right, and its indirect effects on rights of confrontation or due process are somewhat attenuated.

such a display would be prepared nor should we impress upon the FBI a burden that may unnecessarily hinder effective law enforcement.

Although Axtman argues that the FBI could have procured or devised a photo that would not have carried any indication of criminal activity, we cannot say that the FBI did not act properly in pursuing an expeditious investigation of these occurrences.[7] The photo display involved in this case was merely one step in the investigation, and the failure of the FBI to sanitize every aspect of its investigation in anticipation of a purely speculative effect upon a future defendant's conduct of her defense is not of a type to require reversal as a matter of constitutional law or as an exercise of our supervisory power.

More important, we cannot say that Axtman was placed in so intolerable a position between "the rock" of tainted identification and "the hard place" of suggested criminal activity[8] that reversal on the facts of this case is necessary. In this case Axtman's counsel opted to cross-examine the witnesses concerning the display. The feature of the photo that incorporated the suggestive characteristic and the incidence of criminal activity was a height backdrop. Although such a backdrop could give rise to an inference of criminal activity, a finding of prejudice in the present case is not ineluctable. The jury, for example, could have

assumed that the photo was taken during the investigative stages of the crimes encompassed in the present indictments. Also, during direct and cross-examination of the identification witnesses, the markings, although referred to, were not unduly stressed to the jury, and no intimations were given to the jury of anything detrimental about the photo.

Second, counsel for Axtman vigorously asserted at oral argument that admission of the photo display into evidence was improper. *See United States v. Rixner*, 548 F.2d 1224 (5 Cir. 1977).[9] This case is somewhat singular in that counsel for Axtman expressed at trial his intention to introduce the photographs, and did not object when the prosecution did so. We accept counsel's argument that his acquiescence in admissibility was a necessary trial tactic in light of the trial judge's determination that the identification testimony was admissible. In light of the facts that he does not object on appeal to that determination and that we have rejected Axtman's proposed exclusionary rule, however, we fail to see how the trial judge erred in admitting the display when both sides indicated a desire and need to use the evidence.

The key to any error in this case was whether the trial judge should have resolved the "Axtman dilemma" by excluding the identification testimony. Since we hold that exclusion was not required, the admission of the photo display with the acquies-

---

7. Axtman's counsel argued that the FBI could have requested a photo of Axtman from the Milwaukee police, but there is no indication that that photo would have been devoid of similar markings. At oral argument counsel suggested that the FBI could have taken another photo of Axtman against a blank background. The photo employed was taken in Portland, Oregon, when Axtman had been arrested by the FBI on other charges. There is no indication in the record, however, that Axtman was *in fact* still in custody at the time the need for a new photo arose, nor can we reasonably speculate how long acquiring a new photo would have taken. The FBI also might have attempted to mask the backdrop, but any such attempt may have merely increased the suggestiveness of the photo.

We do not mean to say that deliberate use by the FBI of a photo suggesting prior criminal conduct when a bland alternative is available would not trigger our supervisory powers. On the facts of this case, however, no such unreasonable conduct is apparent.

8. For purposes of this opinion, we adopt counsel's figure of speech.

9. Both appellant and appellee urge this court to adopt the tripartite analysis of *United States v. Fosher*, 568 F.2d 207 (1 Cir. 1978), and *United States v. Harrington*, 490 F.2d 487 (2 Cir. 1975), in determining the admissibility of such photos. We pretermit any discussion of the advisability of such an adoption. *See United States v. Bowers*, 567 F.2d 1309 (5 Cir. 1978).

cence of Axtman could not give rise to any independent error.[10]

AFFIRMED.

10. In light of our discussion of this issue, we need not address the invitation of *United States v. Rixner*, 548 F.2d 1224 (5 Cir. 1978), to reverse as an exercise of our supervisory power. In *Rixner* the court found that admission was harmless error, but warned of reversals in future cases.