UNITED STATES of America,
Plaintiff-Appellee,

v.

Mario Antonio TORRES–FLORES, a/k/a
Leopoldo Hernandez-Segovia, Defend-
ant-Appellant.

No. 86–2940.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1987.

Thomas S. Berg, Asst. Federal Public
Defender, Roland E. Dahlin, II, Federal
Public Defender, Thomas G. Lindenmuth,
Asst. Federal Public Defender, Houston,
Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Henry
K. Oncken, U.S. Atty., Houston, Tex., for
plaintiff-appellee.

Before RUBIN, GARZA and JOLLY,
Circuit Judges.

GARZA, Circuit Judge:

Mario Antonio Torres-Flores was accused of assaulting an agent of the United States Border Patrol in violation of 18 U.S.C. § 111. The identity of the person who fired a weapon at the agent was the only issue in dispute. The Government presented a single witness for identification, and a series of potentially suggestive photographs as evidence. After trial by jury, the defendant was found guilty, and the court imposed a maximum sentence of ten years imprisonment as provided in the statute.

The defendant challenges the district court's ruling to admit evidence that the defendant had been apprehended for unspecified offenses at other times at the site of the assault. Additionally, the defendant argues that the court erred in admitting a photograph of him and a series of photographs taken from a "rogues' gallery" of criminals. Our study of the record indicates that the court did not abuse its discretion in permitting testimony of the prior apprehensions. It did not unduly prejudice the defendant with evidence of bad character. However, the defendant was denied a fair trial because the photographs were introduced in an impermissibly suggestive manner. We are compelled, therefore, to reverse and remand the case for a new trial.

## I. Facts and Proceedings

On March 13, 1986, at about 5:30 in the afternoon, Pedro Rosario, an agent of the United States Border Patrol, was on line watch at the Rio Grande River. He was in his vehicle, patrolling the United States-Mexican border at river point 54 in Brownsville, Texas. River point 54 is known for its heavy volume of illegal alien traffic. As he was travelling along the levee which ran parallel to the Rio Grande River, Rosario observed three men walking between the levee and the river. The men were about three hundred feet away from Rosario. The men saw Rosario and fled, heading south toward the river and Mexico. He parked his vehicle and chased them until they reached the river.

The closest man was still in the United States just a few feet from the river, the middle man was one-third of the way across the river, and the third man, the man furthest away from Rosario, was halfway across the river. Rosario later testified that his attention was on the man closest to him. The Rio Grande was shallow at point 54 and the men were running across it. Rosario yelled in Spanish at the man closest to him to "come over here." Suddenly, the man furthest away from Rosario turned around, and Rosario saw that he had a .38 caliber revolver in his right hand. This man was approximately 45 to 50 feet away from Rosario.

The man fired two shots at Rosario, turned around, and proceeded toward Mexico. The bullets did not hit the agent. Rosario took his eyes off the man with the gun as he ducked for cover. As he drew his service revolver and backed up to get better cover, the man turned around again and fired two more shots. Again, Rosario was not hit. When he fired the second set of shots, the man was about 75 feet away from Rosario. Rosario decided not to return fire because he did not want to create an international incident and because, as a rookie with the Border Patrol, he was still on probation.

All three men escaped into Mexico. The entire incident lasted about five minutes. About 90 seconds elapsed from the moment when the man with the pistol turned to fire the first time until the agent lost sight of them in Mexico. Rosario notified his supervisor about the episode, and filed a written report. The report and its supplemental memorandum contained no description of the assailant or his companions. There was no follow-up investigation of this matter. The gun as well as the bullets were never recovered.

Three months later, Agent Rosario was sitting in the Border Patrol locker room. He saw a small stack of photographs that are regularly kept there. Rosario had never looked through the photographs before. The photographs are of men suspected to be thiefs, smugglers, transvestites, and the like. He noticed a picture of a man who resembled the man who had shot at him three months earlier. The photograph was of the defendant. It was taken several

months earlier for a prior arrest. Rosario notified his supervisor and a lookout was established by the office. The defendant was arrested several days later at a Brownsville bus station. Rosario later identified the defendant as the man who had fired the shots at him after the defendant was shown alone to Rosario. At all times Rosario was positive that the defendant was the person who fired the weapon at him. He later testified that his assailant's face was indelibly fixed in his memory.

A one-count indictment was filed against the defendant, alleging a forcible assault on a Border Patrol agent in violation of 18 U.S.C. § 111.[1] At trial, the Government sought to introduce the various photographs that Rosario had looked through in discovering the defendant. When Rosario was questioned by the prosecution about the circumstances of his viewing the photographs, he characterized them as "pictures of various people we take, smugglers, transvestites."[2] The defense's objection to this testimony was overruled. Record, vol. 2, at p. 26.

Eight of the nine photographs had words written on them next to the individual's body. For instance, some of the notations read "robbery suspect," "in slammer for murder," "river bandit," "thief," and "transvestite." Similarly, the defendant's photograph had something written on it, but the notations were completely covered up before being presented to the jury. The jury was shown the defendant's photograph, half of which was covered by three pieces of brown paper and tape. The eight other photographs which had notations on them were not covered up, and thus the jury could read the suspected crimes of what defense counsel calls the "rogues' gallery."

Additionally, the lower court permitted testimony by other Border Patrol agents to the effect that the defendant had been apprehended, under an alias, for unspecified offenses at river point 54 in January and April of 1986. This testimony placed the defendant at the scene of the crime both before and after the assault on Agent Rosario. The defendant presented no testimony or other evidence.

During its deliberations the jury submitted one question to the court. The question focused solely on how much weight should be given to Rosario's eyewitness identification of the defendant as the assailant. The court responded that it was for the jury to decide how much weight should be accorded the testimony. The jury returned with a verdict of guilty. The court subsequently imposed a sentence of ten years imprisonment, the maximum provided under the statute.

## II. Discussion

The defendant first complains that the lower court committed reversible error in allowing testimony that the defendant had been apprehended by Border Patrol agents at river point 54 before and after the assault on Rosario. The Government offered this evidence to prove identity under Rule 404(b). Fed.R.Evid. 404(b).[3] The defend-

---

1. The statute provides:

   **Assaulting, resisting, or impeding certain officers or employees**

   Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

   Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. The photographs can best be described as "mug shots." Although there is no side view of the suspects, there is a full frontal view. The photographs were taken by Border Patrol agents while the suspects were in custody. A chalkboard can be seen next to the suspects. The chalkboard lists seven identifying characteristics. The listed identifications included: 1) name, 2) also known as, 3) date and place of birth, 4) date, 5) national origin, 6) number, and 7) remarks. There is also a measuring tape evident in the background so that the height of the suspect is recorded.

3. Rule 404(b) of the Federal Rules of Evidence provides:

   **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prepara-

ant contends that the prior apprehensions were dissimilar to and had nothing in common with the *modus operandi* of the assault. *See United States v. Goodwin,* 492 F.2d 1141, 1154 (5th Cir.1974). The defendant maintains that the court permitted evidence of the defendant's illegal entry, and that illegal entry is not similar to assaultive behavior. Therefore, the defendant concludes that the evidence was not probative of identity because it did not tend to show that the defendant fired the shots at Rosario.

■■■ The trial court's decision to admit character evidence under Rule 404(b) will be upheld unless it is shown that there was an abuse of discretion. *United States v. Edwards,* 702 F.2d 529, 530 (5th Cir.1983). Evidence of other crimes or bad acts is admissible upon satisfaction of the prerequisites outlined in *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Evidence of extrinsic offenses must meet a two-step test before it is admitted pursuant to Rule 404(b). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Id.* When evidence of extrinsic offenses are offered to prove identity, "[a] much greater degree of similarity between the charged crime and the uncharged crime is required." *United States v. Myers,* 550 F.2d 1036, 1045 (5th Cir.1977), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

Because the identification of the defendant is the only real question in the case, and Rosario was the only eyewitness to the assault, it was imperative for the Government to show that the defendant was present at river point 54 at the time of the assault. The evidence was proffered to corroborate the identification of the defendant as the assailant. The showing that he had been there both prior to and subsequent to the assault made it more probable that he was there on March 13, 1986. The evidence was relevant to an issue other than propensity, and therefore the first step enunciated in *Beechum* is met.

Further, the district court did not permit the prosecution to go into detail about the two other apprehensions at river point 54. It was simply noted that he had been apprehended there before. The crimes were not specified. At most, it was implied that he was an alien who was illegally in the United States. Clearly, the danger of undue prejudice did not outweigh the probative value of the evidence. It is our view that the court adequately protected the rights of the defendant by instructing the jury, and thus the defendant was not deprived of a fair trial.[4]

---

tion, plan, knowledge, identity, or absence of mistake or accident.

**4.** Judge Hinojosa gave an adequate cautionary instruction to the jury regarding the prior arrest. The judge stated:

Ladies and gentlemen, with regards to that last testimony involving a prior arrest, evidence or testimony that an accused has been arrested at a prior time or on another occasion is not evidence or proof that that person did another act at another time or another occasion and may not be considered for such purpose. In other words, testimony that a defendant may have committed at some other time another act may not be considered by you in determining whether the accused in fact committed the act specifically alleged in the indictment.

Indeed, evidence or testimony concerning another act or at some time or place not charged in the indictment may not be considered for any purpose whatsoever unless you first find that other evidence in this case, standing alone, establishes beyond a reasonable doubt that the accused did the particular act charged in the indictment. If you should find beyond a reasonable doubt from other evidence in the case that the accused did the act charged in the indictment, then you may consider evidence as to some other act on the part of the defendant in determining the state of mind or proof of motive, opportunity, intent, plan, preparation, knowledge, identity, or absence of mistake or accident with which the accused did the act charged in the indictment.

That's the only purpose for which you may consider that testimony, ladies and gentlemen. So please keep that advice in mind and please follow that instruction as I have just given it to you.

Record, vol. 2, at pp. 129–30.

Our review of the record reveals that the district court did not abuse its discretion in allowing the jury to hear evidence of the two other apprehensions of the defendant near river point 54. It was proper to introduce the limited testimony, pursuant to Rule 404(b), because it established that the defendant frequented that area. The Government presented it because it went to the question of identity and to the fact that the defendant frequently visited the area. This testimony bore on the probability of his presence there at the time of the assault. It was, therefore, relevant and highly probative, and was not outweighed by any prejudice to the defendant. *See* Fed.R. Evid. 403.[5]

■ The defendant's second challenge concerns the introduction into evidence of the defendant's photograph and the photographs of other suspects from the Border Patrol locker room. The defendant objects that the probativeness of the photographs was overwhelmed by the prejudicial effect of the hearsay notations. The defendant submits that when his partially covered photograph was viewed in conjunction with the "rogues' gallery," the jury needed little imagination to infer what was concealed underneath. The defendant concludes that this evidence by inference made it more likely that the jury would draw an improper characterization of him as a river bandit or the like.

The photograph of the defendant is similar to the photographs of the "rogues' gallery" except that the prejudicial notations had been covered on the defendant's

photograph. Clearly, it would have been a feasible and wiser practice for the court to require the Government to cover the notations on all the photographs before their submission into evidence. The court did attempt to remove the prejudicial implications when it instructed the jury to disregard the commentaries.[6] Notwithstanding the court's cautionary instructions, our study of the record establishes that the defendant was not protected from being convicted on the basis of impermissible suggestion.

The question of the admissibility of photographs of an accused has long been the subject of review. Plainly, there is grave risk in the introduction of photographs which carry prejudicial implications, "through police notations or the appearance or pose of the accused in the photograph." *United States v. Reed,* 376 F.2d 226, 228 n. 2 (7th Cir.1967). Although the photographs in this instance are not of the classic dual-pose format, they are equivalent to the traditional "mug shot" because of the setting. This type of photograph may imply to the jury that the accused has either a prior criminal record or a prior arrest record. Consequently, it raises the issue of the character of the accused without his having placed his character in evidence. *See Barnes v. United States,* 365 F.2d 509, 510 (D.C.Cir.1966).

It is a fundamental principle of our jurisprudence that evidence of an accused's prior criminal record is inadmissible when the accused chooses not to testify and does not place his character in issue. *Id.; United*

5. The similarity of the extrinsic offense and charged offense generates sufficient probity to meet Rule 403's requirement that the probative value of the testimony not be substantially outweighed by its unfair prejudice.

6. After reviewing the photographs and deciding against the defendant on his motion to suppress, Judge Hinojosa instructed the jury:

Ladies and gentlemen of the jury, you will see that when you go into the jury room to start deliberations you will take the exhibits that have been admitted, and you will see some writing on there about "robbery 2 suspect" or some other matters with regards to allegations of violations of crimes. Please understand that the only reason you are to consider these pictures is for the information

as to whether they were the pictures that Mr. Rosario used when he went through the pictures. But you are to disregard any statement with regards to any allegation of any other crime that may be written on there and you cannot consider that for purposes of returning a verdict in this case.

Record, vol. 2, at p. 32. The court further instructed the jury regarding the photograph of defendant:

Ladies and gentlemen, on Defendant's [sic] Exhibit No. 1 you can only consider the front part. The rest is with regards to something else that has nothing to do with this case. So please do not consider that in any way. Just the front part of this.

Record, vol. 2, at p. 195.

*States v. Yaughn,* 493 F.2d 441, 443 (5th Cir.1974). The photographs which were admitted into evidence here, like the classic "mug shot," are generally indicative of past criminal conduct. An inference of the defendant's bad behavior in the past may then be created in the minds of the jurors. Such an inference is violative of an accused's right to have his guilt or innocence of the crime charged determined strictly on the basis of the evidence regarding the crime charged. A basic tenet of our criminal law is that a person must not be convicted based on the jury's assumption that the person is bad because he committed some unrelated crime in the past. On the other hand, sometimes it is imperative for the Government to introduce the photographs in order to identify the defendant and prove its case. The district court is thus required to balance the Government's need for the evidence against the accused's constitutional protections for a fair trial. The only way that the photographs can be admitted is if the trial judge determines that the probative value outweighs the prejudice to the defendant.

■ This Court will not disturb a district court's ruling on the admission of relevant photographs unless an abuse of discretion is evident. *United States v. Cochran,* 697 F.2d 600, 608 (5th Cir.1983). Where all police or prison identification numbers, notations or other indicia have been completely excised, most courts have held that it is permissible to introduce photographs of a defendant. *See Reiger v. Christensen,* 789 F.2d 1425, 1430 (9th Cir.1986); *Futrell v. Wyrick,* 716 F.2d 1207, 1208 (8th Cir.1983); *United States v. Oliver,* 626 F.2d 254, 263 (2d Cir.1980); *United States v. Johnson,* 495 F.2d 378, 384 (4th Cir.), *cert. denied,* 419 U.S. 860, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974); *United States v. Davis,* 487 F.2d 112, 121 (5th Cir.1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974); *Huerta v. State,* 390 S.W.2d 770, 772 (Tex.Crim.App.1965). However, where police or prison identification numbers, notations or other indicia remain on the photographs and are shown to the jury, most courts have held that it is impermissible because it conveys the impression of bad character of the accused. *See United*

*States v. Scott,* 494 F.2d 298, 301 (7th Cir.1974); *United States v. Harman,* 349 F.2d 316, 320 (4th Cir.1965); *Vaughn v. State,* 215 Ind. 142, 19 N.E.2d 239, 241 (1939); *see also United States v. Rixner,* 548 F.2d 1224, 1226 (5th Cir.) (damaging information on photographs held harmless in light of other "strong evidence" against defendant), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977); *United States v. Guinn,* 454 F.2d 29, 37 (5th Cir.) (suggestive photographs properly admitted because defendants opened the door for admission), *cert. denied* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972). *See generally* Annotation, *Admissibility, and Prejudicial Effect of Admission, of "Mug Shot," "Rogues' Gallery" Photograph, or Photograph Taken in Prison, of Defendant in Criminal Trial,* 30 A.L.R.3d 908 (1970 & Supp.1986) (comprehensive review of federal and state cases). At least two circuit courts have addressed the question of the prejudicial nature of the defendant's photograph where part of the photograph was covered to prevent the jury from viewing incriminating indicia. Both of those courts concluded that the prosecution's masking of the notations did not remove the improper impression passed on to the jury. *See United States v. Fosher,* 568 F.2d 207, 215 (1st Cir.1978); *Barnes v. United States,* 365 F.2d 509, 510 (D.C.Cir. 1966).

Neither the defendant nor the Government has provided any apposite authority regarding the admissibility of the photographs in their briefs. Our research into the question, however, has provided a legion of cases which bear on the disposition of this appeal. In *Cochran,* for instance, this Court found that the lower court did not err in admitting into evidence photographs of the defendants. "The photographs were taken at the time of arrest and they did not indicate any prior criminal activity." 697 F.2d at 608. The fact that the photographs in *Cochran* were taken at the time of the arrest distinguishes it from this case. The *Cochran* photographs did not indicate that the defendants were involved in earlier trouble with the law. The *Cochran* court then cited *Fosher* as an

example where reversal was required because prior criminal activity was inferred by a photograph. *Id.*

In *Fosher*, the district court admitted a "mug shot" of the defendant which was taken in connection with an earlier and unconnected arrest. 568 F.2d at 208. The defendant's photograph was tendered along with seven other photographs of other suspects viewed by the Government's witness. *Id.* at 210. Prior to being submitted to the jury, the Government masked the incriminating portions of the photographs. The chest placard which bore police identification numbers was covered with tape. The written notations on the backs of the photographs were concealed by an index card which was stapled to the photographs. *Id.*

The First Circuit adopted a three factor analysis to guide lower courts faced with a ruling on the admission of suggestive photographs. *Id.* at 214. The Second Circuit had previously set forth three factors to be used in determining whether or not the introduction of "mug shots" would result in reversible error:

1. The Government must have a demonstrable need to introduce the photographs; and

2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and

3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

*United States v. Harrington*, 490 F.2d 487, 494 (2d Cir.1973). The *Fosher* court found that the Government had a demonstrable need to introduce the photographs, and that the manner of introduction did not draw undue attention to the source of the photograph or the defendant's prior confrontation with the police. 568 F.2d at 216. The Court then noted:

In the circumstances of this case, however, in which the evidence of defendant's guilt was less than overwhelming, we hold that the district court abused its discretion in admitting a photograph which on its face implied prior criminal

conduct on defendant's part. While the photograph was not without probative value, this value was substantially outweighed, Fed.R.Evid. 403, in the circumstances of this case, especially as the pictures could easily have been modified so as to avoid characteristics which would cause the jury to identify the defendant as having a prior record. The masking that was attempted was so inartful and incomplete as merely to invite the jury's attention to these prejudicial matters.

*Id.* at 217.

Likewise, the *Barnes* court determined that the admission of a "mug shot" of the defendant constituted prejudicial error because there was a substantial probability that the defendant's prior criminal record was impressed upon the jury in reaching its verdict. 365 F.2d at 511. Like the defendant in the present case and the defendant in *Fosher*, Barnes did not testify. Nonetheless, because the issue focused on identification, the district court allowed the prosecution to introduce in evidence a "mug shot" photograph of defendant, conveying to the jury the information that the defendant had a police record. Barnes' photograph was viewed by the jury "with a wide strip of adhesive tape covering the prison numbers on the bottom half of the photographs. Pieces of paper were placed over the back of both exhibits to cover written material." *Id.* at 510. Like the district court in the present appeal, the judge issued a cautionary instruction directing the jury to not consider the covered material. *Id.*

The District of Columbia Circuit determined that there was substantial and prejudicial error that required reversal. The court's decision ultimately turned on "the prosecution's flimsy efforts to hide" the numbers and notations. *Reiger*, 789 F.2d at 1430 n. 5. The *Barnes* court wrote:

The rudimentary tape cover placed over the prison numbers on the photograph, and over the notations on the reverse side, neither disguised the nature of the picture nor avoided the prejudice. If anything, by emphasizing that something

was being hidden, the steps taken here to disguise the nature of the picture may well have heightened the importance of the picture and the prejudice in the minds of the jury.

*Barnes*, 365 F.2d at 511.

Our circuit is not without case law concerning the introduction of an accused's photograph in an impermissibly suggestive manner. In *United States v. Davis*, 487 F.2d 112, 121 (5th Cir.1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974), the character of the composites of the defendant implied a prior criminal record. The district court properly ordered the Government to remove all police markings from the photographs, and specifically directed counsel not to highlight the photographs. This Court did not have to reach the issue whether the photographs were impermissibly suggestive because the defendant took the stand and testified as to his prior felony conviction. *Id.* Obviously, the Government cannot rely upon *Davis* to support the defendant's conviction.

In discussing *Barnes*, however, this Court took notice of how the district court "carefully removed" the identifying marks from the pictures. *Id.* Here, in contrast, the notations of the defendant's photograph were not carefully removed; instead, they were carelessly covered by several pieces of paper and tape. Even more outrageous is the fact that the other photographs were not covered at all.

This circuit has upheld several district court rulings which have admitted suggestive photographs into evidence. Notwithstanding the fact that a photograph tended to allude to a criminal record or bad character, the admission could not form the basis for a reversal either because it constituted harmless error in light of other "strong evidence" against the defendant, *United States v. Rixner*, 548 F.2d 1224, 1226 (5th Cir.), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977); *United States v. Sawyer*, 504 F.2d 878, 879 (5th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975), or because the door for the admission of the photographs was opened by the defendants, *United States v. Guinn*, 454 F.2d 29, 37 (5th Cir.), *cert. denied*, 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972). *See also United States v. Bowers*, 567 F.2d 1309 (5th Cir.), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978). Unlike the defendants in *Guinn*, the defendant did not take the witness stand, did not present any evidence, and therefore he did not place his character in issue. In *Rixner*, each of the photographs introduced had information on the backs regarding prior criminal records except the defendant's photograph. The Court commented that the photographs were erroneously admitted, but it constituted only harmless error because there was an identification of the defendant by several witnesses. 548 F.2d at 1226. In *Sawyer*, the Court found that the admission of the prejudicial photographs was harmless because there were three witnesses who identified the defendant and there were incriminating statements by the defendant. *Sawyer*, 504 F.2d at 879.

In the present appeal there is only one witness who can identify the defendant. Agent Rosario's entire identification was based on a five minute encounter, 90 seconds of which brought him within 50 feet of his assailant. His photographic identification of the defendant occurred three months after the incident. There is no other "strong evidence," and thus the Government cannot hang its hat on the harmless error rule. Further, this Court previously has warned that "the assistant United States Attorneys and other government prosecutors should take heed regarding the introduction of mugshots during trial and if this practice is continued, future cases may very well be reversed." *Rixner*, 548 F.2d at 1226. This language is indicative of the strong stance this circuit has taken in opposition to the introduction of impermissibly suggestive photographs of past criminal conduct.

■ In *Fosher* and *Harrington*, the First and Second Circuits squarely confronted the question which is before this Court. We believe that the *Fosher* and *Harrington* courts employed an intelligent and reasonable standard in determining whether a photograph was properly admitted. Therefore, we adopt the tripartite

analysis enunciated in those cases, and will now apply it to the facts of this case.[7]

The first requirement is that the Government must have a "demonstrable need" to introduce the photographs. It is abundantly evident that the prosecution needed to introduce the photographs into evidence, particularly in light of the fact of its relevance in the identification by Agent Rosario. The matter of identification was the crux of the Government's case. Therefore, the first part of the test easily is satisfied.

The second factor is that the photographs must not imply that the defendant has a prior criminal record. It has already been established that the inference of prior criminal conduct in the minds of the jurors is grounds for reversal where the defendant has not placed his character in issue. Thus, "the visual message conveyed by a photograph assumes heightened importance." *Fosher*, 568 F.2d at 214. From a perusal of the defendant's photograph in conjunction with the photographs of the "rogues' gallery," the jury could have concluded that the defendant had a prior criminal or arrest record. Although the photograph of the defendant was covered to permit the jury only to view his face and body, the other photographs showed a measuring tape in the background and a chalkboard which listed seven identifying characteristics of the subject. The photographs obviously indicated that the subjects were in law enforcement custody.

Moreover, the Government's inartful covering of the defendant's photograph more than likely heightened the jury's awareness of the prejudicial nature of the photograph. As defense counsel effectively explained, these exhibits left little room for imagination in the minds of the jurors as to what was being concealed. The probability that the Government's exhibits impressed upon the jury the fact of the defendant's prior criminal conduct is substantial.

The final factor to be addressed focuses on the manner of introduction of the photographs at trial. The Government cannot draw particular attention to the source or implications of the photographs. The trial transcript reveals that Judge Hinojosa made a good effort to cautiously guide the assistant United States Attorney as he prepared to introduce the photographs. At all times the judge attempted to prevent the jury from hearing about the details of the photographs by calling counsel to the bench.

However, there was evidence in the record that the Government brought out testimony concerning the source of the photographs. Agent Rosario testified that the photographs were kept in the Border Patrol locker room. The agent also boldly testified that the photographs were of "thiefs, transvestites." Record, vol. 2, at p. 26. As the *Fosher* court pointed out, the district court must be active in protecting the jury from hearing about the source and implications of the photographs. 568 F.2d at 216. Consequently, the court should have limited the testimony of Agent Rosario. It should have been stipulated that the source of the photographs would not be brought out on direct examination.

## III. Conclusion

Under the circumstances of the case, in which only one witness was able to identify the defendant and in which the other evidence against him was slight, we believe

---

7. We are mindful that this Court previously declined to adopt the analysis proposed by the other circuits. *See United States v. Axtman*, 589 F.2d 196, 199 n. 9 (5th Cir.1979). However, the reason for our reluctance to adopt it was based on the fact that the standard was not needed to reach a decision in *Axtman*. We stated, "We pretermit any discussion of the advisability of such an adoption. *See United States v. Bowers*, 567 F.2d 1309 (5 Cir.1978)." *Id.* In *Bowers*, we set out the three factors established in *Fosher* and *Harrington*, but the disposition of the case did not rest on that analysis. *Bowers*, 567 F.2d at 1313.

In both *Axtman* and *Bowers*, we upheld the introduction of potentially prejudicial photographs. Our rationale in *Axtman* was based on the assumption that the jury could have believed that the photographs were taken for the crime charged. In addition, "both sides indicated a desire and need to use the evidence." 589 F.2d at 199. Our reasoning in *Bowers* was based on the necessity of the Government to impeach the defendant's testimony regarding his appearance prior to his arrest. 567 F.2d at 1314. Neither of these exceptions could possibly pertain to the defendant in this appeal.

that the district court committed prejudicial error in its evidentiary ruling. The court abused its discretion in allowing the photographs into evidence because the probative value of the photographs as admitted was substantially outweighed by the prejudicial impact on the defendant. There exists a definite possibility that the photographs impressed upon the jury impermissible evidence of bad character, and therefore the defendant was deprived of a fair trial.

The defendant is entitled to a new trial. Should the Government attempt to introduce the photographs again, it should take more effective steps than mere taping to disguise the nature of the photographs. *Harrington*, 490 F.2d at 499 (Friendly, J., dissenting). We instruct the trial court to excise all of the suggestive material from all of the photographs. The makeshift taping of three pieces of brown paper to the defendant's photograph should be excised so that only the subject is shown. The unexpurgated photographs of the "rogues' gallery" also must be excised so that only the subjects are shown.

Further, in light of the fact that this case will be presented to a jury again on the merits, we believe it is important to comment on the testimony of the Border Patrol agents regarding the defendant's apprehensions at river point 54, both before and after the alleged assault on Rosario. Although we held that it was not an abuse of discretion for the trial court to allow this testimony, our inquiry into this subject discloses that it is a fairer and wiser practice for the court to limit this sort of testimony. We instruct the district court, therefore, to limit the agents' testimony to the fact that they observed the defendant at river point 54, and not to allow any statements that they apprehended or arrested him there. The agents may be examined concerning what they observed the defendant doing at the river, but the trial court must be careful to prevent the Government from bringing out evidence of other crimes.

REVERSED AND REMANDED.