**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-5530

United States of America,

Plaintiff-Appellee,

VERSUS

Augustin Mora Carrillo,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

(January 12, 1993)

Before WISDOM, JOLLY, and DEMOSS, Circuit Judges.

DEMOSS, Circuit Judge:

A jury found the defendant guilty of distribution of heroin and cocaine based on an undercover officer's testimony that he purchased a narcotics-filled balloon from the defendant. At trial, the defendant's alibi was mistaken identity:  he claimed that the police officer misidentified him as the seller.  The district court allowed the government to present evidence of two other sales of controlled substances by the defendant as modus operandi to help establish his identity as the drug seller in the present case. Carrillo challenges the admission of those extrinsic acts under the identity exception of Federal Rule of Evidence 404(b).  Because we

hold that those acts do not bear a sufficient degree of similarity to the charged offense to mark it as the handiwork of the defendant, we vacate the conviction and remand for a new trial.

## I.  FACTS AND PROCEDURAL HISTORY

Detective Leo Alonzo (Alonzo), an undercover officer with the San Antonio police department, testified that at approximately 10:00 a.m. on January 8, 1991, he was approached while standing near the Three Kings Lounge on West Commerce by a man who asked what he wanted.  Alonzo had received a tip from a confidential informant that a man named "Tito" was selling heroin in the area, and so replied that he was looking for "Tito."  The man pointed to another man walking down Commerce Street and told Alonzo that the man was "Tito."

As Alonzo approached "Tito," who Alonzo later identified as Augustin Mora Carrillo, Carrillo asked Alonzo what he wanted and Alonzo replied that he needed a "veinte," a street term meaning twenty dollars' worth of narcotics.  Alonzo gave Carrillo twenty dollars and Carrillo took a balloon, which contained cocaine and heroin, from his mouth and handed it to Alonzo.  Alonzo took the drugs and kept walking.[1]

---

[1]  The January 8 transaction occurred very quickly; Alonzo saw the seller for approximately thirty seconds.  No other officer observed the sale.  The police did not photograph or videotape the transaction.  The serial numbers on the bills used to pay for the heroin were not recorded.  During a four-year period prior to January 8, 1991, Carrillo participated in between 300 and 500 undercover drug buys, and on a prior occasion had misidentified a narcotic's seller.

After the sale, Alonzo received information that the man who had sold him the heroin was named Augustin Carrillo and that he lived on Barney Street. He advised his partner, Detective Barbe, of that information and Barbe retrieved a photograph of Carrillo from the police files. Later that day, Alonzo identified the man in the photograph--Carrillo--as the person that sold him the drugs. Carrillo was arrested and charged with distribution of cocaine and heroin in violation of 21 U.S.C. § 841 (1992).

Before trial, Carrillo filed a motion in limine seeking to exclude any evidence of other crimes, wrongs, or acts, specifically that evidence of his two extrinsic acts of selling heroin. The district court denied the motion, ruling that if Carrillo raised the issue of identity, then it would allow the government to call the two police officers to testify about the details of Carrillo's prior offenses to show that Carrillo was the seller. Thus, when Carrillo claimed as an alibi defense that he was at the intersection of San Marcos and Buena Vista streets, a few blocks from where the drug transaction that Detective Alonzo participated in took place, the district court ruled that Carrillo had raised the issue of identity and allowed the government to call the two police officers as witnesses.

The government called San Antonio Police Detective Manuel Garcia, who testified that while working undercover on April 9, 1990, he purchased two balloons of heroin from Carrillo at a house about four blocks from the Three Kings Lounge--near where Detective

Alonzo's buy took place.  He said that he was third or fourth in line to buy drugs from Mr. Carrillo, and that Carrillo sold drugs to everybody who was at the house.  Additionally, Detective Michael Peters testified that on March 28, 1991, he arrested Carrillo for heroin possession at a location near the Three Kings Lounge after observing Carrillo conducting a drug transaction with a pregnant woman.  Peters testified that Carrillo possessed several balloons filled with heroin when he arrested him.

The jury found Carrillo guilty and the judge sentenced him to serve 168 months in prison with a five-year term of supervised release and ordered him to pay a $50 special assessment.  Carrillo filed a timely notice of appeal raising one issue--the admission of the extrinsic act evidence.

## II.  DISCUSSION

### A.  "The Test"

A district court's decision to admit evidence under Rule 404(b) is reviewed under an abuse of discretion standard.  United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991). "Nevertheless, . . . [this court's] review of evidentiary rulings in criminal trials is necessarily heightened."  Id.  Federal Rule of Evidence 404(b), in issue here, states:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident. . . .

The admissibility of extrinsic act evidence under Rule 404(b) is determined by application of the two-part test enunciated by this court in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978), cert denied, 440 U.S. 920, 99 S. Ct. 1244, 59 L. Ed.2d 472 (1979). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character." Id. at 911. "Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Fed. R. Evid.] 403."[2] Beechum, 582 F.2d at 911. Character evidence is not excluded because it has no probative value, but because it sometimes may lead a jury to convict the accused on the ground of bad character deserving punishment regardless of guilt. United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991).

B. "Application of the Test"

To support his contention that the district court erred in admitting evidence of the extrinsic acts, Carrillo relies on the case of United States v. Silva, 580 F.2d 144 (5th Cir. 1978). In Silva, the defendant was convicted for distributing heroin and cocaine; he argued that testimony admitted by the trial court

---

[2]Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

concerning a subsequent negotiation for the sale of heroin[3] was inadmissible under the identity exception without a showing that it bore such a high degree of similarity as to mark it as the defendant's handiwork. The court agreed with the defendant: "[t]he identity exception has a much more limited scope; it is used either in conjunction with some other basis for admissibility or synonymously with modus operandi." Silva. at 148. The court stated an extrinsic offense is not admissible under 404(b) to show identity "merely because it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused." Id. In the Silva case, the court held that "no such handiwork was . . . shown." Id. Carrillo contends in the present case that the district court erred in admitting evidence of the extrinsic offenses because they were not so similar to the charged offense as to mark it as his handiwork.

To refute Carrillo's contention, the government relies on the case of United States v. Torres-Flores, 827 F.2d 1031 (5th Cir. 1987), where the court allowed evidence to be admitted showing that the defendant, accused of assaulting a border patrol officer, had previously been arrested at the same river checkpoint so as to place the defendant at the scene of the crime. We believe that the

---

[3] In Silva, the undercover agent who participated in the charged offense testified to a continuing series of meetings with the defendant, the purpose of which was to locate a source of supply. No further purchases were made, however, presumably because the agent was unable to provide the "front money."

government's reliance on <u>Torres-Flores</u>, however, is misplaced because that case did not involve the modus operandi method of proving identity.[4]  In <u>Torres-Flores</u>, the defendant did not testify and thus the only evidence to corroborate the border patrol officer's testimony and place the defendant at the checkpoint during the commission of the offense was the testimony that he had been apprehended there twice before.  The court did not hold that the evidence was admissible based on the uniqueness or similarity between the prior border crossings and the charged offense, but on the fact that the defendant had crossed there before and therefore was more likely to have been there on the day the charged offense occurred.  Conversely, in the present case showing that Carrillo was in the area where the charged offense occurred adds little weight to the evidence against him since he doesn't deny being in the area--he claims that he was a few blocks away at the intersection of San Marcos and Buena Vista.

In that regard, the Fifth Circuit has recognized that evidence not constituting a signature or otherwise demonstrating a particular, identical modus operandi may nonetheless be admissible under the identity exception.  <u>United States v. Evans,</u> 848 F.2d 1352, 1360 (5th Cir. 1988), <u>modified on rehearing,</u> 854 F.2d 56 (5th Cir. 1988);  <u>See, e.g.,</u> <u>United States v. Aguirre Aguirre,</u> 716 F.2d

---

[4]  Although the defendant in <u>Torres-Flores</u> argued that the "prior apprehensions were dissimilar to and had nothing in common with the modus operandi of the assault," the court never addressed that argument.  <u>Id.</u> at 1034.

293, 300 (5th Cir. 1983); United States v. Montemayor, 684 F.2d 1118, 1121 (5th Cir. 1982). In United States v. Evans, 848 F.2d 1352, 1360 (5th Cir. 1988)(quoting 22 C. Wright § K. Graham, Federal Practice and Procedure § 5246, at 512 (1978)), modified on rehearing, 854 F.2d 56 (5th Cir. 1988), this court stated:

> [t]he exception in Rule 404(b) for use of other crimes evidence will probably be used most often . . . `[t]o prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused.' This exception, often referred to as the `handiwork or signature exception' or the exception for `modus operandi' is, however, only one method by which other crimes can prove identity. It is important that courts recognize these different modes so as not to impose requirements, such as distinctive similarity, that apply only to the modus operandi method of identification, on different methods of using other crimes evidence to show identity.

While recognizing the different methods by which other crimes can prove identity and that only the modus operandi method needs to meet the handiwork or signature exception, here, it is abundantly clear that the government sought to introduce the extrinsic acts to prove identity by showing Carrillo's methods of selling heroin were so similar to the method used in the charged offense and so distinctive from the normal method as to mark it as his handiwork. The government sought to avail itself of the modus operandi method; and, as such, the government was required to show that evidence of the extrinsic acts was sufficiently similar to the charged offense and sufficiently unique from the common practice for it to do so.

Carrillo's extrinsic offenses of selling heroin fail to satisfy those requirements.

Detective Alonzo himself testified that drug dealers and users frequent the area in which he made the drug purchase. He further stated that it is "very common" for a street dealer to distribute narcotics in a balloon; he explained that packaging the drug in this way allows the dealer to swallow it if a police officer approaches. Alonzo also testified that he had previously purchased narcotics in undercover operations when a dealer distributed the narcotics in a balloon. Alonzo did not testify to any characteristics of the purchase that was unique or would tend to mark the drug sale as the handiwork of the accused. In sum, the January 8 sale was a typical drug sale in a drug-ridden urban neighborhood where such transactions are commonplace. Thus, the testimony of Garcia and Peters did not corroborate the identity of the seller through unique or uncommon elements of the transaction. The evidence, in our opinion, did no more than to illustrate Carrillo's bad character and to show that he acted in conformity with that character on January 8. Such is not permissible; and, indeed, is the purpose behind the prohibition of propensity evidence in Rule 404(b). Therefore we hold that the trial court erred in admitting evidence of Carrillo's extrinsic offenses of selling heroin.

## III. CONCLUSION

The extrinsic acts of Carrillo were not sufficient to mark them as the handiwork of Carrillo and thus were not admissible under the modus operandi method of identification. For the foregoing reason, the conviction of Carrillo is VACATED and the case REMANDED for a new trial.