**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-8401
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

AUGUSTIN MORA CARRILLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

(April 29, 1994)

Before SMITH and BARKSDALE, Circuit Judges, and WALTER,[*] District
Judge.

JERRY E. SMITH, Circuit Judge:

Augustin Carrillo appeals his conviction on one count of
distribution of controlled substances, in violation of 21 U.S.C.
§ 841. He contends that the district court erred in (1) admitting
police mugshots that were used to bolster the validity of the
police identification and (2) refusing to allow cross-examination
of a police officer concerning his ability to identify defendants
in other unrelated cases. Finding no error, we affirm.

---

[*] District Judge of the Western District of Louisiana, sitting by
designation.

In January 1991, Detective Leo Alonzo received complaints that a man named "Tito" was selling drugs in the 800 block of West Commerce in San Antonio. Alonzo obtained "front" money from his supervisor and arrived at the address around 10:00 a.m. on January 8. He observed a man loitering outside the "Three Kings Lounge" who asked him what he wanted. Alonzo stated that he sought Tito; the man pointed up the street to an individual walking toward the detective.

Alonzo walked up to the individual and carefully studied his facial features, noticing his unusual protruding lower lip. The individual asked Alonzo what he wanted; Alonzo replied, "Veinte," meaning twenty dollars worth of narcotics. Alonzo handed the man twenty dollars, and the man pulled a balloon out of his mouth and handed it to the detective. The exchange lasted approximately twenty to twenty-five seconds. Chemists later determined that the balloon contained a mixture of cocaine and heroin. Alonzo's partner, Detective Jim Barbe, retrieved a photograph of Augustin Mora Carrillo ("Carrillo") from the police department "mug book," and Alonzo affirmatively identified the man.

B.

Carrillo was indicted on one count of distribution of cocaine and heroin in violation of 21 U.S.C. § 841. He was convicted by a jury, but that conviction was overturned based upon the improper

admission of prior convictions the government used to prove his identity.  <u>United States v. Carrillo</u>, 981 F.2d 772 (5th Cir. 1993). Prior to his second trial, Carrillo sought to exclude the finger-pointing identification by the man outside the Three Kings Lounge and the mugshots.  The photograph (exhibit 3, not offered into evidence) had been split into two, a profile (3a) and a frontal view (3b), both published to the jury.  Furthermore, the photos had been cropped and enlarged to remove writing and height measurement lines.  The district court allowed the photographs and refused to exclude the identification information.

On cross-examination of Alonzo, Carrillo's counsel questioned the detective about his inability to recognize photographs in an unrelated prosecution.  The government objected to the use of extraneous evidence, and the objection was sustained.  Nevertheless, defense counsel was permitted to cross-examine Alonzo about his botched identification of a defendant in another case. Carrillo was convicted again.


## II.

Carrillo first challenges the district court's admission of evidence concerning his prior convictions, specifically, the "intelligence information"[1] and the mugshots.  Carrillo objected to the admission of this evidence <u>in limine</u> and at trial.  We review the district court's evidentiary rulings for abuse of discretion; in a criminal case, however, review of the trial court's eviden-

---

[1] "Intelligence information" refers to the complaints of a man named Tito selling drugs and the identification of Tito by the gentleman at the Three Kings Lounge.

tiary rulings is necessarily heightened.  <u>Carrillo</u>, 981 F.2d at 773.


A.

The "intelligence information" issue turns on the definition of hearsay and the exceptions thereto.  An out-of-court declaration is inadmissible as hearsay only if offered to prove the truth of the matter asserted.  FED. R. EVID. 801(c), 802.  Out-of-court statements providing background information to explain the actions of investigators are not hearsay.  <u>United States v. Gonzalez</u>, 967 F.2d 1032, 1035 (5th Cir. 1992); <u>cf.</u> <u>United States v. Hernandez</u>, 750 F.2d 1256 (5th Cir. 1985) (reversing conviction where background information was used in prosecutor's closing for truth of matter asserted and no limiting instruction was given).  The telephone complaints were not offered to prove that Alonzo had purchased the narcotics from Carrillo.  Instead, the statement that a man named Tito was selling drugs was offered by the government for the purpose of explaining why Alonzo went to that location in the first place.  And the fact that the man outside the Three Kings Lounge pointed to Carrillo was not offered to prove that Carrillo was Tito or that Carrillo was dealing drugs; rather, it explained why Alonzo approached Carrillo.

Carrillo argues that even if the evidence is not hearsay, courts scrutinize such testimony because of its prejudicial effect.  <u>See</u> <u>United States v. Gomez</u>, 529 F.2d 412, 416-17 (5th Cir. 1976); FED. R. EVID. 403.  The more directly an out-of-court declaration implicates the defendant, the greater the danger of prejudice.

Conversely, when the statement does not directly implicate the defendant, the probative value outweighs the prejudicial effect. See, e.g., United States v. Martinez, 939 F.2d 412, 415 (7th Cir. 1991) (holding that testimony about out-of-court declaration identifying "a man" was nonprejudicial). Here, Alonzo referred to a man named Tito. Although the jury obviously inferred that Carrillo was Tito, this linking was less obvious than was the statement in Gonzalez that "Gonzalez was trafficking in large quantities of heroin and cocaine." Gonzalez, 967 F.2d at 1034. Furthermore, the court in the instant case gave a lengthy limiting instruction.

Carrillo claims that the reason for Alonzo's presence in the area was not at issue in the case, and therefore the background information was irrelevant. But the government was entitled to give the jury background information to explain why Alonzo was looking for a man named Tito. Given the limiting instruction, the testimony was not unfairly prejudicial.


B.

Carrillo also complains that the photographs prejudiced him because they were recognizable as mugshots. We review the admission of photographs for abuse of discretion. United States v. Cochran, 697 F.2d 600, 608 (5th Cir. 1983). In United States v. Torres-Flores, 827 F.2d 1031, 1037, 1038-39 (5th Cir. 1987), this court adopted a three-part test for determining the admissibility of mugshots: (1) The government must have a demonstrable need to introduce the photographs; (2) the photographs must not imply that

the defendant has a criminal record; and (3) the manner of introduction at trial must not draw attention to the source or implications of the photographs.

The first requirement is met here where identification is the central issue of the case. Id. at 1039. The second factor weighs in favor of the government. In Torres-Flores, the court concluded that the jury easily could have realized that the photo was a mugshot where the measuring tape was visible in the background and the government "inartfully" taped over the police notes on the bottom of the photo. Here, on the other hand, the police cropped and enlarged the photos so that no identifying marks or measuring lines were visible. The only factor that would lead a jury to conclude that the photos were taken from a mugshot is the fact that the defendant was pictured in the classic mugshot pose, a front and side view. We conclude that the government sufficiently disguised the photos, especially given the fact that the poses were split into two separate photographs that were physically separated (i.e., cut apart into two sheets of paper). If these photos were inadmissible, it is difficult to imagine how a mugshot could be altered to satisfy the second requirement.

The third factor is the manner of introduction of the photos. Although Alonzo made no mention of the photos' source, Officer Barbe testified that he had retrieved the photos from the "SAPD Identification Bureau." This statement weighs in favor of the defendant, except that the defense failed to object to it and that the answer was unresponsive to the prosecutor's question. Furthermore, the government claims that Barbe was talking about

exhibit 3, not 3a or 3b.  We conclude that the admission of the photos was not an abuse of discretion, given the importance of the evidence and the substantial success in disguising the source.  Moreover, the admission of the intelligence information and the photos together did not prejudice the defendant by implying that he had a criminal record.

III.

Carrillo also contends that the district court improperly restricted his cross-examination of Alonzo.  The district court has broad discretion in limiting cross-examination, United States v. Duncan, 919 F.2d 981, 985 (5th Cir. 1990), cert. denied, 111 S. Ct. 2036 (1991), but the court must safeguard the defendant's right under the Sixth Amendment to confront witnesses against him, Carrillo v. Perkins, 723 F.2d 1165, 1168 (5th Cir. 1984).

Carrillo claims that the court's refusal to allow the impeachment of Alonzo's identification skills deprived Carrillo of the opportunity to present his sole defense.  Carrillo's attorney would have shown Alonzo several photographs and asked him to identify the individuals.  If Alonzo could not identify the individuals in the photos, Carrillo's attorney would then point out that the men were all criminal defendants prosecuted for drug offenses where Alonzo was the complainant.  This technique was designed to prove that Alonzo's identification technique was flawed.

The court did not allow this line of cross-examination because it constituted extrinsic evidence, not inconsistent statements.

Under FED. R. EVID. 608(b) specific instances of conduct may not be proved by extrinsic evidence.  <u>United States v. Martinez</u>, 962 F.2d 1161, 1164 (5th Cir. 1992); <u>see also</u> H. Richard Uviller, Essay, <u>Credence, Character, and the Rules of Evidence:  Seeing Through the Liar's Tale</u>, 42 DUKE L.J. 776, 805 (1993).  Carrillo was allowed to cross-examine Alonzo concerning an unsuccessful identification in another case, however.  Although the line of questioning might have been useful, it was impermissible under rule 608(b), and therefore the district court did not abuse its discretion.

   AFFIRMED.