UNITED STATES of America,
Plaintiff–Appellee,

v.

Alfredo CAPOTE–CAPOTE and Gustavo Perdomo Rodriguez, Defendants–Appellants.

No. 90–3493.

United States Court of Appeals,
Fifth Circuit.

Oct. 25, 1991.

Donald O. Pinkston, New Orleans, La. (Court-appointed), for Capote.

Kyle Schonekas (Court-appointed), Stone, Pigman, Walther, Wittmann & Hutchinson, Marc D. Winsberg, New Orleans, La., for Rodriguez.

John O. Braud, Peter G. Strasser, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La.,

Before POLITZ and HIGGINBOTHAM, Circuit Judges, and PRADO, District Judge:[1]

PRADO, District Judge:

## I

At approximately 5:15 p.m. on August 10, 1989, an informant working with the Drug Enforcement Administration called the United States Attorney's office in New Orleans and reported that two men had offered to sell him cocaine. The informant, who was not a New Orleans resident, had been taken by one of his contacts to a private residence and shown cocaine, but could not recall the name of the street, although he remembered the numbers "853" over the door. He did not know the full names of the sellers, but did have a pager number. The sellers had given him twenty minutes to collect the money to buy the cocaine and then meet them at a local grocery store.

The DEA agents met with the informant, outfitted him with a transmitting device, and arranged a "bust signal" that would communicate the fact that he had seen the cocaine: The agents would make the arrest when the informant opened the trunk of his car and removed his briefcase. The sellers would be told that the empty case contained money. According to the govern-

---

1. District Judge of the Western District of Texas, sitting by designation.

ment, there was not time to arrange for "flash" money.

The sellers, ultimately identified as appellants Alfredo Capote–Capote and Gustavo Perdomo Rodriguez, arrived at the grocery store after the informant telephoned Capote from a pay phone. The informant followed Capote and Rodriguez to Rodriguez's apartment, where the cocaine was stashed. The DEA agents took up surveillance positions in an effort to determine exactly where the three men went. Between 6:45 and 7:00 p.m., the informant, accompanied by Rodriguez, went to his car and gave the bust signal by opening his trunk and removing his briefcase. Just as the informant and Rodriguez re-entered the residence, the agents arrived at the door. Capote tried to close the burglar-bar door; one of the agents grabbed it. Capote ran up to the second floor and Rodriguez fled to the attic. The agents then identified themselves and made a warrantless entry, arresting Capote shortly after entering the residence, and apprehending Rodriguez an hour later after he fell from his attic hiding place. The agents also arrested Patricia Jordan, who was found near an upstairs bathroom. While the other agents were trying to persuade Rodriguez to come down from the attic, case agent Sams began preparing the necessary documents for a search warrant, which was ultimately obtained at approximately 9:00 p.m.

During the initial protective sweep the agents found a kilogram of cocaine, a revolver, and a shotgun. A machine gun was found later during execution of the warrant.

Capote, Rodriguez, and Jordan were indicted on four counts: (1) conspiracy to distribute two kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846; (2) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) using and carrying a fully automatic machine gun during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and (4) using and carrying a shotgun and revolver during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).

Rodriguez pleaded guilty to both drug charges, and was tried on the gun charges. Capote and Jordan were tried on all four counts. A jury found Rodriguez guilty on the gun counts, Capote guilty on all counts, but acquitted Jordan. Rodriguez and Capote appeal. Both challenge the warrantless entry of the residence and the sufficiency of the evidence to support the gun charges. Capote also complains of the trial court's denial of his motion to sever, and its ruling that the government would be allowed to impeach Capote with evidence of a previous conviction if Capote testified in his own defense. Finding no error, we affirm.

## II

■ The district court denied the appellants' motions to suppress the evidence obtained in the warrantless entry:

... the Court finds that the motion to suppress should be and is denied, that the entry and subsequent sweep were justified. And the inviting of the confidential informant in the premises to conduct business and the exigent circumstances of the rapidly unfolding investigation and criminal ongoing conduct in the case justifying the agent's belief in obtaining the warrant would result in danger to the informant.

(R.Vol. 3, p. 77).

When reviewing a trial court's ruling on a motion to suppress, we accept the court's factual findings unless clearly erroneous or influenced by an incorrect view of the law, and view the evidence in a light most favorable to the prevailing party. We review questions of law *de novo. United States v. Muniz–Melchor,* 894 F.2d 1430, 1433–4 (5th Cir.1990).

■ We begin with the principle that a warrantless entry into a home is presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). One exception to the warrant requirement is the presence of exigent circumstances, which by their urgency justify warrantless searches or arrests. *See Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990); *Welsh v. Wisconsin,* 466 U.S. 740, 749–750,

104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984). Frequently cited examples of the types of exigent circumstances that may justify warrantless entry include hot pursuit of a suspected felon, the possibility that evidence in the residence may be destroyed or removed, and danger to the lives of officers or others in the residence. *Kirkpatrick v. Butler*, 870 F.2d 276, 281 (5th Cir.1989). The officers, however, cannot deliberately create the exigent circumstances in an attempt to circumvent the requirements of the Fourth Amendment. *United States v. Webster*, 750 F.2d 307, 327 (5th Cir.1984); *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir. 1983); *United States v. Scheffer*, 463 F.2d 567, 574–5 (5th Cir.1972). Further, the mere presence of weapons or destructible evidence does not alone create exigent circumstances. *United States v. Munoz–Guerra*, 788 F.2d 295, 298 (5th Cir.1986).

The government alleges that the rushed circumstances of the buy and bust justified the warrantless entry. The government claims that because of the rapidly unfolding investigation it had no time to get money to give the informant to show to Capote and Rodriguez, and was further unable to seek a warrant because it did not have the full address of the residence, and could not tell which apartment the suspects had initially entered. The agents were therefore justified in waiting until the informant had given the bust signal and returned to the apartment before they attempted an arrest. Once the informant was in the apartment without the money, the agents reasonably believed he was in danger, and were justified in entering the residence. A warrant was obtained approximately four hours after the informant first called the DEA with news of the deal.

Capote and Rodriguez argue that any danger to the informant and any risk of destruction of evidence was created by the government. The agents decided to send the informant into the apartment with an empty briefcase, and should have foreseen any ensuing risk. Appellants suggest that the agents could have gotten money, could have arrested Rodriguez on the street, or indeed could have arrested both suspects when they met the informant at the grocery store.

This is not a case like *Thompson* or *Scheffer*, in which the government controlled the timing of the transaction, and the fact that the exigency might have been foreseeable is not dispositive. *See United States v. Hultgren*, 713 F.2d 79, 88 (5th Cir.1983). This was not the result of a carefully orchestrated, multi-day investigation. Indeed, the informant had been about to leave New Orleans after a deal he had been working on fell through when he received a call informing him that appellants had cocaine to sell. He had twenty minutes to collect the money and meet back with appellants. Given the abbreviated time frame within which the agents were operating and their inability to obtain a warrant before the transaction, we conclude that the exigent circumstances were not created by the government. Unlike the agents in *Munoz–Guerra*, the agents in this case did not act unjustifiably in sending the informant into the apartment without money. Once the appellants had required the informant to promise that he would deliver the money within minutes, the agents had no other viable option. The warrantless entry was thus justified. The trial court correctly concluded that the evidence obtained pursuant to the entry and subsequent sweep was admissible.

### III

Capote and Rodriguez also challenge the sufficiency of the evidence to support their conviction under 18 U.S.C. § 924(c)(1) for using or carrying a machine gun during and in relation to a drug trafficking crime. When reviewing a claim that the evidence is insufficient to support a verdict, we consider the evidence in a light most favorable to the verdict and determine whether a rational finder of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Ivy*, 929 F.2d 147, 150 (5th Cir.1991).

Section 924(c)(1) provides in pertinent part:

Whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall . . . be sentenced to imprisonment for five years, . . . and if the firearm is a machine gun, . . . to imprisonment for thirty years. . . .

The government need not prove actual use or brandishing of the weapon, but may meet its burden by showing that the weapon facilitated, or could have facilitated, the drug trafficking offense. *United States v. Blake*, 941 F.2d 334, 342 (5th Cir.1991); *see also United States v. Beverly*, 921 F.2d 559, 562–3 (5th Cir.1991); *United States v. Rocha*, 916 F.2d 219, 237 (5th Cir.1990). The presence of loaded firearms at the home of a defendant where drugs, money, and ammunition are also found is sufficient to establish the use of a firearm as an integral part of a drug trafficking crime. *United States v. Molinar–Apodaca*, 889 F.2d 1417, 1424 (5th Cir.1989). The fact that the defendant is arrested at a different place from where the weapon is found is legally insignificant. *United States v. Blankenship*, 923 F.2d 1110, 1115 (5th Cir. 1991).

■ The machine gun was discovered with a loaded clip beside it inside a zipped bag in a closed drawer in a chest on the second floor of the apartment. Capote and Rodriguez argue that the weapon was not and could not have been used to facilitate the transaction in its "partially disassembled" condition. They further point out that neither of them was seen with a gun, neither mentioned a gun to the informant, and neither was linked to the gun by fingerprints or any indicia of ownership.

Viewing the evidence in a light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that this weapon could have been used to facilitate the drug transaction. The gun, a fully automatic machine pistol was found with a clip loaded with .45 caliber ammunition. Two other loaded weapons were found in the apartment, as were the cocaine, scales, and other drug paraphernalia. Both Capote and Rodriguez

ran upstairs after the agents entered the residence, and the gun was not so remote or inaccessible that it could not have been employed as an instrument in the transaction. Weapons in the home may facilitate a drug crime because the defendants could use the guns to protect the drugs. *United States v. Onick*, 889 F.2d 1425, 1432 (5th Cir.1989). The jury was entitled to conclude based on the totality of the circumstances surrounding the transaction that the machine gun was there to protect the drugs.

IV

Capote further appeals from the trial court's refusal to sever the trials in light of Rodriguez's plea of guilty to the drug charges. The trial judge explained to the jury that Rodriguez had pleaded guilty to the conspiracy and possession charges, and during opening statement Rodriguez's attorney stated that Rodriguez had been "honest and forthright" in admitting he committed the crimes.

■ Severance is a matter left to the sound discretion of the trial court, and a defendant is not entitled to severance unless he can demonstrate specific compelling prejudice that actually results in his having received an unfair trial. *United States v. Greer*, 939 F.2d 1076, 1095–96 (5th Cir. 1991); *United States v. Guerra–Marez*, 928 F.2d 665, 676 (5th Cir.1991).

■ Capote has not shown the necessary prejudice. The trial court twice instructed the jury that they were to consider the guilt or innocence of Capote and Jordan separately from that of Rodriguez. (R.Vol. 5, p. 9; R.Vol. 6, p. 395). The jury was apparently able to do precisely that as Jordan was acquitted on all counts. In addition, because Capote was not named as Rodriguez's admitted co-conspirator, that is, was not directly implicated by the statements at issue, he was not denied his sixth amendment right of cross-examination. *United States v. Espinoza–Seanez*, 862 F.2d 526, 534 (5th Cir.1988); *United States v. Basey*, 816 F.2d 980, 1005 (5th Cir.1987).

## V

Capote also complains of the trial court's ruling that the government would be allowed to cross-examine Capote concerning a prior conviction if Capote took the stand, even though the government stated at the pretrial conference that it had no evidence to offer under Federal Rule of Evidence 404(b). Capote moved to suppress the evidence of the prior conviction on the grounds of unfair surprise. According to Capote, when this motion was denied, he decided not to testify in his own defense.

The government states that it had provided Capote with a copy of his rap sheet, which included several state court proceedings, but did not reflect any dispositions. During the trial, an agent reviewed the state court records and obtained a copy of the conviction, which was provided to Capote's counsel as soon as it was received by counsel for the government. The government contends that because the evidence was not offered in its case in chief, but only as possible impeachment evidence, it was admissible under Federal Rule of Evidence 609(a)(1).

▮▮▮▮ Admission of evidence is reviewed for abuse of discretion, and even if abuse is found, the error is reviewed under the harmless error doctrine. *United States v. Jimenez Lopez*, 873 F.2d 769, 771 (5th Cir.1989). We conclude that the rap sheet contained enough information to place Capote on notice. The government was not withholding *Brady* material, and gave the information to defense counsel when it received it, albeit in the middle of trial. The government did not offer the evidence in its case in chief, and Capote's counsel had not promised the jury that Capote would testify. Under these circumstances, we find neither surprise nor prejudice sufficient to conclude that the trial court abused its discretion.

## VI

For the foregoing reasons, we affirm the convictions. AFFIRMED.