# UNITED STATES COURT OF APPEALS
## for the Fifth Circuit

_____

No. 91-5573
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERTO GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

(July 26, 1992)

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and HARMON, District Judge.[1]

PER CURIAM:

Defendant-Appellant Roberto Gonzalez appeals his conviction for possession of heroin with intent to distribute, asserting error in the denial of his motion to suppress his statements to officers, the admission of hearsay statements of confidential informants, and the admission of Defendant's statements without prior discovery of their substance. Finding no error in any of the rulings, we affirm.

I.  The Motion to Suppress

Gonzalez was arrested in his home for possession of heroin with intent to distribute. Over Defendant's objection, the arresting officer, Joe Arabit, testified about statements Gonzalez made after his arrest. Gonzalez had moved to suppress the

_____

[1]  District Judge of the Southern District of Texas, sitting by designation.

statements he gave Arabit because they were made pursuant to a warrantless arrest inside the Gonzalez residence. Finding the initial warrantless arrest justified by exigent circumstances, the district court denied the motion to suppress. We affirm.

"When reviewing a trial court's ruling on a motion to suppress, we accept the court's factual findings unless clearly erroneous or influenced by an incorrect view of the law, and view the evidence in a light most favorable to the prevailing party. We review questions of law *de novo*." United States v. Capote-Capote, 946 F.2d 1100, 1102 (5th Cir. 1991), cert. denied, 60 U.S.L.W. 3798 (1992).

Applying this deferential standard, we find no error in the district court's factual finding of exigent circumstances. The circumstances elucidated by Arabit's testimony, viewed favorably to the prosecution, were as follows. On June 30, 1990, a few days before the arrest, Arabit first learned from a confidential informant that Gonzalez was a trafficker in cocaine and heroin. Working undercover on July 3, Arabit received information that Gonzalez sold multi-ounce quantities of heroin from his home. The day before the arrest, on July 5, two informants told Arabit that they had recently seen heroin at the Gonzalez residence.

Finally, on July 6, the morning of the arrest, shortly before 11 o'clock, Arabit received information from one of his informants that he saw heroin again in the Gonzalez home, and that it would be moved within the hour. Officers entered the house at 11:45 a.m. Gonzalez was arrested and read his rights at that time. Although Arabit had intended to get a warrant before going to the house, he decided not to get a warrant until after he secured the house. His

2

decision was based on the information that Gonzalez was going to move the heroin within the hour. Further, Arabit testified,

> It would have been very difficult to set up any type of surveillance on this street without having been detected. And the only reason that we would have set up surveillance prior to this would be to be able to get a warrant and enter the house with a warrant. Surveillance would have been detected, the heroin would have either been destroyed or moved. At least that's my feeling.
>
> And if we would have not set up surveillance and had gotten a warrant anyways, the heroin would have probably been gone by the time we got there.

Reasonable fear of the destruction or removal of evidence is an exigent circumstance that may justify a warrantless entry into a private home. Capote-Capote, 946 F.2d at 1103; United States v. Webster, 750 F.2d 307, 326 (5th Cir. 1984), cert. denied, 471 U.S. 1106 (1985); United States v. Thompson, 700 F.2d 944, 946-47 (5th Cir. 1983). The Government has shown the officer's reasonable belief that the drugs would be removed within the hour and that, if he set up surveillance, the drugs would be destroyed. Given these facts, the district court's finding of exigent circumstances is not clearly erroneous.

Defendant makes much of the fact that Arabit did not proceed directly to Gonzalez's house upon receiving his latest information from the informant. Some forty-five to fifty minutes elapsed between the last tip and the entry into the Gonzalez residence. According to Gonzalez, Arabit's failure to immediately assemble his team and head to the Gonzalez home is inconsistent with the claim of exigency, because it indicates that Arabit was in no great hurry to search the house.

3

Arabit spent those minutes computer-checking Gonzalez's address and criminal history, driving by the house a few times, and assembling seven to ten officers. Only then did Arabit proceed to Gonzalez's house. He testified that he had heard of obtaining a warrant by giving an affidavit over the telephone, but had never done it before; he supposes that in that time frame he could have obtained a search warrant. In fact it took Arabit an hour and a half to obtain the warrant.

Arabit took three to four minutes to check on Gonzalez on the computer and another twenty minutes to drive to the house. He took some time to assemble a team of officers, which he wanted for security purposes. The court may have concluded that the officer's use of these forty-five minutes was not unreasonable or inconsistent with the claim of exigency. "In any event, the reasonableness of a search under exigent circumstances is not foreclosed by the failure to obtain a warrant at the earliest practicable moment." United States v. Gardner, 553 F.2d 946, 948 (5th Cir. 1977), cert. denied, 434 U.S. 1011 (1978). Viewing these facts with reasonable inferences in favor of the Government, we find no error in the court's conclusion that the warrantless entry was justified by exigent circumstances. Affirming the finding of exigent circumstances, we necessarily hold that the entry was legal and a warrant was not required. See Capote-Capote, 946 F.2d at 1102 (recognizing that although we begin with the principle that a warrantless entry into a home is presumptively unreasonable under the Fourth Amendment, an exception to the warrant requirement is the presence of exigent circumstances). Finding no Fourth Amendment violation, we need not inquire whether Gonzalez's

4

statements were tainted "fruit" of an illegality.  Cf. New York v. Harris, 495 U.S. 14 (1990); Wong Sun v. United States, 371 U.S. 471 (1963).  The trial court correctly admitted the statements.

II.  Hearsay Statements of Informants

Gonzalez moved to exclude Arabit's trial testimony about his confidential informants' statements as hearsay.  The court denied the motion, holding that this evidence was introduced to show "not the truth of the matter but why the officers acted as they did."

Arabit testified that he had been informed "on several occasions" that "Gonzalez was trafficking in large quantities of heroin and cocaine."  Arabit also testified that, based on information that Gonzalez was going to move the heroin "real soon," he proceeded to "go in without a warrant, secure the people, and explain to the Defendant and other[s] what was going on and then get a warrant."

Despite repeated limiting instructions on the use of this testimony,[2] Gonzalez argues, the jury relied on this highly prejudicial hearsay to convict him, as shown by a jury note.[3]

---

[2] The jury was contemporaneously charged that the testimony was "not offered for the truth of the matters but merely to explain the circumstances of the entry of the officer into the building." Again before the deliberations, the jury was instructed specifically regarding "testimony by the case agent that he had received information that Mr. Gonzalez trafficked in heroin." The charged continued,

> That evidence was admitted for the limited purpose of showing the basis of the entry by police officers into Mr. Gonzalez's home on July the 6th, 1990. It is not any evidence that Mr. Gonzalez, in fact, trafficked in heroin, and you may not consider it for any purpose other than the limited purpose for which it was admitted.

[3] During deliberations, the jury asked if they could "have access to the testimony of Officer Arabit about the number of calls he received indicating there was drug activity by Roberto Gonzalez." The jury was properly instructed; we will not assume

5

The statements here are not hearsay, because they were not used to prove the truth of the matter asserted, that is, that Gonzalez was trafficking in drugs. See Fed. R. Evid. 801(c). The context makes clear that the testimony was elicited to establish the reason for the warrantless entry into the Gonzalez residence and the evidence was relevant for that purpose. Nothing more was said about the informants until closing argument. Then the prosecution properly limited its use of the disputed evidence to the narrow purpose for which it was offered. This distinguishes United States v. Hernandez, 750 F.2d 1256 (5th Cir. 1985), cited by Gonzalez, in which the prosecution used the statement in closing to argue the truth of the matter asserted. Testimony not used to establish the truth of the assertion "simply does not fall under the proscriptions against the use of hearsay." United States v. Vizcarra-Porras, 889 F.2d 1435, 1439 (5th Cir. 1989), cert. denied, 495 U.S. 940 (1990).

III. Discovery of Gonzalez's Statements to Officers

Gonzalez finally asserts that the prosecution violated Rule of Criminal Procedure 16 by not revealing all Gonzalez's statements to officers. The Rule provides:

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: . . . the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant . . . in response to interrogation by any person then known to the defendant to be a government agent. . . .

_____

that the jury considered this testimony for an improper purpose. Moreover, "the mental processes of the jury in its deliberations are not subject to judicial scrutiny." United States v. Vincent, 648 F.2d 1046, 1049 (5th Cir. Unit A June 1981).

6

Fed. R. Crim. P. 16(a)(1)(A) (eff. until Dec. 1, 1991).  We review alleged errors in the administration of discovery rules for abuse of discretion and will not reverse on the basis of such errors unless a defendant establishes prejudice to his substantial rights. United States v. Ellender, 947 F.2d 748, 756 (5th Cir. 1991).  Such errors that do not affect substantial rights must be disregarded. United States v. Gordon, 812 F.2d 965, 971 (5th Cir.), cert. denied, 482 U.S. 908 (1987), and cert. denied, 483 U.S. 1009 (1987).

Gonzalez complains that the statements provided in response to his discovery motion were largely exculpatory, but those revealed at trial were incriminating; thus he was surprised and prejudiced at trial.  Gonzalez specifically objects to not having discovery about testimony that he wavered, by first denying knowledge of any heroin, then stating, "if there's heroin here, it's not in the house."

At a detention hearing several months before trial, Arabit testified,

> At first he told me that there wasn't any heroin in the house.  And after we spoke with him for a little while longer, he said he wasn't sure that there was, whether there was heroin or not, but that, if there was heroin, that it was outside.  That it was not inside the house.

This constitutes actual production of the statement, well in advance of trial.  Because the statement was known and available to Defendant, he cannot show any prejudice which justifies reversal on appeal.

Gonzalez also complains about lack of disclosure of his statement to Arabit that Lozano had been working on a jeep in the

7

yard and that Lozano "had the hood up so maybe there [was] heroin in there." (The officers found heroin in the jeep bed.) The DEA form that Gonzalez received before trial revealed Gonzalez's statements as follows:

> . . . GONZALEZ stated that his source of supply for heroin was . . . LOZANO. . . . GONZALEZ stated that he picked LOZANO up at the Greyhound bus station on Thursday afternoon, and that LOZANO advised GONZALEZ that LOZANO had approximately 8 to 8 and one-half ounces of pure Mexican black tar heroin for sale. GONZALEZ also stated that LOZANO showed GONZALEZ the heroin and GONZALEZ told LOZANO not to bring the heroin into the residence---to store it outside.

This disclosure did provide the substance of Gonzalez's oral statement. "'The right to discovery of statements is not a guarantee that the statement is complete in all respects.'" United States v. Arcentales, 532 F.2d 1046, 1050 (5th Cir. 1976) (quoting Castillo v. United States, 409 F.2d 762, 765 (5th Cir. 1969)). Rule 16 does not require that the prosecution disclose all the minutiae of its evidence. United States v. Elam, 678 F.2d 1234, 1253 (5th Cir. 1982).

Moreover, Gonzalez has not suggested any prejudice by the Government's alleged failure to disclose these statements. As in the Arcentales case, in which this Court found no significant prejudice, the particulars of the statements became known during the government's case-in-chief, before Gonzales had to decide whether or not to take the stand. See Arcentales, 532 F.2d at 1050 (applying former Rule 16(a) as though it required the disclosure of oral statements to officers now required under Rule 16(a)).

The disclosure provided by both the DEA form and the testimony of Arabit at pre-trial hearings discharged the Government's duties

8

under Rule 16.  Given the lack of actual prejudice to Defendant, the district court's decision to permit Arabit to testify about Gonzalez's statements was well within its discretion.

## CONCLUSION

Sufficient evidence supports the finding that exigent circumstances justified the warrantless arrest; the motion to suppress Gonzalez's statements was properly denied.  The informants' statements were not hearsay, because they were admitted to show the circumstances of the entry into the Gonzalez residence.  Gonzalez has demonstrated no prejudicial error in the discovery process.  Accordingly, the judgment of the district court is in all respects

AFFIRMED.