**UNITED STATES of America,**

v.

**Neil Alexander DOUGLAS, Movant.**

**Crim. A. No. 92–459 (RCL).**

United States District Court,
District of Columbia.

Aug. 9, 1994.

Steven McCool, U.S. Attorney's Office, Washington, DC, for U.S.

Edward Sussman, Washington, DC, for movant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

### I. INTRODUCTION

This case comes before the court on defendant Neil Alexander Douglas' Motion for a New Trial on the basis of prejudicial prosecutorial misconduct. The court has considered the record in this case, and finds defendant's claim without merit. The court, therefore, denies defendant's motion.

## II. STATEMENT OF FACTS

Mr. Gregory Moss is a police officer in the Metropolitan Police Department. In August, 1992, Officer Moss was detailed out of the patrol section in order to work as a plain-clothes, undercover officer with the Vice Office in the Fourth District. His assignment was to investigate the defendant, Mr. Neil Douglas. Mr. Douglas became a targeted suspect following a series of complaints from citizens of the area around 14th and Sheperd Streets. Officer Moss viewed two police photographs of Mr. Douglas in order to help him identify the suspect.

Officer Moss first encountered Mr. Douglas on November 2, 1992. Moss asked to buy half an ounce of cocaine from Mr. Douglas, who responded that Moss should meet him at the 1300 block of Randolph Street. When Moss arrived there, however, he met Robert Johnson instead. The two men had a brief exchange and Mr. Johnson asserted that he would go and "speed up" Mr. Douglas. A few minutes later, Mr. Johnson returned, entered the car in which Officer Moss sat, and gave Moss a white rock-like substance in exchange for five hundred dollars. Officer Moss then returned to the Fourth District Police Station and gave the package to the narcotics division. The substance tested positive for crack cocaine.

On November 10, 1992, Officer Moss was in the area of 3933 Fourteenth Street, N.W., Washington, D.C. Officer Goodwin, another member of the Metropolitan Police Department, had arrived earlier in order to video-tape the events. Moss met Mr. Douglas and asked to buy a half-ounce of cocaine from him. Mr. Douglas explained that he would first need to buy a scale to measure the cocaine. The two men got into Moss' un-marked police car and drove around the block to a cornerstore on Fourteenth and Spring Road. (The videotape recording cuts off when the car went around the block, and resumes when the car is parked at 3933 Fourteenth Street.) Mr. Douglas acquired a scale and the two men drove back to 3933 Fourteenth Street.

Moss and Douglas got out of the car and entered the building. Mr. Douglas then went up to the second level, where he re-mained for approximately three to five min-utes. When he returned, he handed Moss a white rock-like substance in exchange for five hundred dollars. Moss then returned to his car and drove to the Fourth District Police Station. The substance tested positive for crack cocaine.

On November 16, 1992, Officer Moss re-turned to the 3900 block of Fourteenth Street, this time wearing a small tape record-er (Nagra). He met with Mr. Douglas and had a brief conversation. Moss asked Mr. Douglas if he had seen Mr. Johnson. Doug-las responded that Mr. Johnson had just left. The two men then conversed briefly about job opportunities at the United Parcel Ser-vice office in Burtonsville. (Officer Moss' Nagra tape recorder recorded this conversa-tion.)

Officer Moss next saw Mr. Douglas on November 25, 1992, from an observation post. He identified all target suspects, in-cluding Mr. Douglas, and they were arrested.

Mr. Douglas was subsequently indicted for unlawfully, knowingly and intentionally dis-tributing a mixture and substance containing a detectable amount of cocaine base, also known as crack. On May 12, 1993, Mr. Sussman, defense counsel for Mr. Douglas, wrote a letter to Mr. Glenn Ivey, the prose-cutor handling the case at that time. In the letter, Mr. Sussman asked Mr. Ivey to con-firm his understanding that the Government had no tapes. Mr. Ivey never responded to Mr. Sussman's letter.

Mr. Stephen McCool subsequently as-sumed responsibility for this case from Mr. Ivey. Mr. McCool learned of the tapes on July 9, 1993, immediately informed Mr. Suss-man of their existence and invited him to inspect the tapes. Mr. Douglas comes now before this court seeking a new trial on the basis of prejudicial prosecutorial misconduct. The court analyzes Mr. Douglas' claims and their merits.

## III. PROSECUTORIAL MISCONDUCT

Mr. Douglas argues that the prosecutor's deliberate and prejudicial misconduct denied him a fair trial. Defendant's Motion–I at 6,

9, 12.[1] Mr. Douglas argues four points of prosecutorial misconduct: (1) the discovery delay, (2) the introduction of hearsay testimony during direct examination and the summation rebuttal, (3) the improper reference to the defendant's ethnicity, and (4) the introduction, at trial, of photographs obtained pursuant to an illegal seizure. The court analyzes each claim in turn.

## A. DISCOVERY DELAYS

■ Mr. Douglas asserts that the government's initial failure, and ensuing delay, in disclosing its videotape and audiotape to defense counsel was a flagrant violation of its discovery obligations under Fed.R.Crim.P. 16(a)(1)(A) and 16(a)(1)(C).[2] The government readily concedes this point.[3] Fed. R.Crim.P. 16(d)(2) provides several possible sanctions to enforce the discovery rules. These include granting a continuance, permitting the other party to discover or inspect the evidence, and suppressing the evidence. Fed.R.Crim.P. 16(d)(2). Mr. Douglas moved

to suppress the videotape, audiotape and DEA–7 (drug chemical analysis).[4] The court denied his motion.[5] Mr. Douglas argues that the court's refusal to suppress the evidence overlooked the government's disregard for his discovery rights, prejudiced his substantial rights, and denied him a fair trial. The court cannot agree.

"Relief for violations of discovery rules lies within the discretion of the trial court." *United States v. Rodriguez*, 799 F.2d 649, 652 (11th Cir.1986). *Accord Northrop v. McDonnell Douglas*, 751 F.2d 395, 399 (D.C.Cir.1984) (deferring to trial court's discretion in discovery sanctions). The trial court's discretion, however, is influenced by a principle of restraint. The court should impose the "least severe sanction necessary to ensure prompt and complete compliance with its discovery orders." *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir.1989), *cert. denied*, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989). *See generally United*

---

1. "Defendant's Motion–I" refers to the Defendant's Motion for a New Trial, July 21, 1993.

2. Fed.R.Crim.P. 16(a)(1)(A) states, in relevant part:

    Upon request of a defendant the government shall disclose to the defendant and make available for inspection, copying, or photographing: *any relevant written or recorded statements made by the defendant*, or copies thereof, within the possession, custody or control of the government, the existence of which is known ... The government shall also disclose to the defendant the substance of any other relevant oral statement made by the defendant ... *if the government intends to use that statement at trial*. (Emphasis added.)
    Fed.R.Crim.P. 16(a)(1)(C) states, in relevant part:

    Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, *tangible objects* ... which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are *intended for use by the government as evidence in chief at the trial* ... (Emphasis added.)
    Both the audiotape and videotape fall within the ambit of these rules since the government used both tapes at trial. The videotape was admitted into evidence as Exhibit No. 3 on July 14, 1993. See Trial Transcript at 35, July 14, 1993. The audiotape was admitted into evidence as Exhibit No. 6 on July 14, 1993. See Trial Transcript at 46, July 14, 1993.

3. Government's Opposition to the Motion for a New Trial, p. 6, September 30, 1993.

    Mr. Douglas claims that the government's failure to produce the audiotape also violated its *Brady* obligations. Mr. Douglas argues that "[g]iven the innocuous nature of the conversation [on the audiotape], it is difficult to see how that material could not be considered exculpatory." Defendant's Motion–I at 8. Mr. Douglas' argument makes an unwarranted logical leap from "innocuous" to "exculpatory"; the two words are not synonymous. Although the audiotape does not incriminate Mr. Douglas, it contains nothing which is favorable to or would exculpate him, as *Brady* requires. *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). *See United States v. Bagley*, 473 U.S. 667, 677, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985) (interpreting "exculpatory evidence" as that which, if suppressed, would deprive the defendant of a fair trial). *See also D'Ottavio v. United States*, 794 F.Supp. 520, 520–21 (S.D.N.Y.1992) (concluding that an audiotape which only corroborated witness' testimony did not automatically exculpate the defendant). The court therefore rejects Mr. Douglas' argument that the government violated its *Brady* obligations.

4. Defendant's Motion for Discovery Sanctions at 2, July 9, 1993.

5. Motions Hearing, July 14, 1993, at 26–27.

*States v. Euceda–Hernandez,* 768 F.2d 1307, 1312 (11th Cir.1985).

■ Mindful of this principle, the court evaluates four factors: (1) the reason for the violation (delay), (2) any bad faith by the violating party, (3) whether the defendant suffered any prejudice, and (4) the feasibility of curing the prejudice with a continuance. *United States v. McCrory,* 930 F.2d 63, 69–70 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992); *United States v. Mavrokordatos,* 933 F.2d 843, 847 (10th Cir.1991); *United States v. Christopher,* 923 F.2d 1545, 1554–55 (11th Cir. 1991). The court considers each factor in light of the record.

#### 1. Reason for Delay

■ The Government characterized its failure to respond to Mr. Sussman's letter of May 12, 1993, as an "honest mistake." Motions Hearing–II at 17.[6] The court accepts the Government's representation that the mistake was an "honest" one. Nevertheless, the Government's failure to respond to defense counsel's letter, especially in regards to such an important matter, betrays flawed procedures and a reckless disregard for the defendant's discovery rights. The Government's negligence, therefore, is the only reason—albeit a bad one—for the delay.[7]

#### 2. Bad Faith

This court held a hearing[8] pursuant to Mr. Douglas' Motion for Discovery Sanctions. Mr. Ivey appeared and responded to the court's questions at the hearing. Mr. Ivey knew that the tapes existed and failed to provide them to the defense. Motions Hearing–II at 17. He also failed to respond to Mr. Sussman's letter in writing, although he recalls talking with Mr. Sussman on the telephone (but not about the tapes). *Id.* Finally, Mr. Ivey stated that his failure was not motivated by any bad faith or a desire to "sandbag" the defendant. *Id.* at 18. It was,

he claims, an "honest mistake" and an "oversight." *Id.* at 17, 19.

The court finds no reason to disbelieve Mr. Ivey's statements that there was no wilful misconduct. He was credible and accepted responsibility for his mistake. There is, of course, no question that Mr. Ivey was negligent. Negligence, however, is not necessarily polluted by the stain of bad faith. *See Unigard Security Insurance Company, Inc. v. North River Insurance Company,* 4 F.3d 1049, 1069 (2d Cir.1993). Indeed, the court's finding is supported by Mr. McCool's ensuing conduct: upon assuming the case, he *immediately* informed Mr. Sussman of the tapes. Motions Hearing–I at 110, 112;[9] Motions Hearing–II at 23.

A court should pause before imposing a sanction in the absence of bad faith. *See United States v. Augello,* 451 F.2d 1167, 1170 (2d Cir.1971) (refusing to suppress officers' testimony in absence of bad faith or negligence in their destruction of tapes); *Turner,* 871 F.2d at 1580 (admitting testimony of officer concerning taped conversations despite government's failure to provide tapes to defense, due to the absence of bad faith).

#### 3. Prejudice and Potential Cure

Mr. Sussman argues that if the government had disclosed the tapes in time, "no doubt the quality of the defense would have been altered." Defendant's Motion at 6. Mr. Sussman contends that his defense strategies were severely limited and his efforts largely misfocused. *Id.* at 7. For these reasons, Mr. Sussman argues, the admission of the tapes severely prejudiced Mr. Douglas. *Id.* at 8. The court has already determined that the delay did not prejudice the defendant. *See* Motions Hearing–II at 26. Nevertheless, an analysis of the potential cure (a continuance) for any such prejudice will serve as an instructive examination of the court's finding.

A continuance is the preferred sanction for a discovery delay. *Euceda–Hernandez,* 768

---

6. "Motions Hearing–II" refers to the transcript of the Motions Hearing, July 14, 1993.

7. The Government has offered no reason (other than its own negligence) for this delay.

8. Motions Hearing, July 14, 1993.

9. "Motions Hearing–I" refers to the transcript of the Motions Hearing, July 13, 1993.

F.2d at 1312. In *Euceda–Hernandez*, the trial court had suppressed certain post-arrest statements made by the defendants to federal agents because the prosecutor failed to provide defense counsel with the substance of the statements until three days prior to trial. *Id.* at 1308. The appeals court reversed: "By suppressing the Government's evidence rather than granting a continuance or recess, a trial judge may achieve a speedier resolution to a criminal case and reduce his docket, but he does so at the expense of sacrificing the fair administration of justice and the accurate determination of guilt and innocence." *Id.* at 1312.

In *United States v. White*, 846 F.2d 678 (11th Cir.1988), *cert. denied*, 488 U.S. 984, 109 S.Ct. 537, 102 L.Ed.2d 568 (1988), the court declared that any prejudice caused by the Government's late (discovery) production can be allayed by granting a continuance. *Id.* at 691. A continuance, the court explained, provides defense counsel with additional time in which to alleviate the prejudice. *Id.* at 692. The suppression of evidence, therefore, works against the goals of Rule 16, which is the fair administration of justice. *Id.*

Mr. Sussman did not go so far as to *request* a continuance. Instead, he declared, "I don't think a continuance is going to help me along." Motions Hearing–I at 118. This declaration is antithetical to Mr. Sussman's concerns of "substantial prejudice" to Mr. Douglas. Several courts have held that when defense counsel fails to request a continuance after a discovery delay, such failure erases any potential prejudice created by the delay. *See De Laval Turbine, Inc. v. West India Industries, Inc.*, 502 F.2d 259, 263 n. 6 (3d Cir.1974) ("Any claim of prejudice (surprise) is belied by the fact that Henry Lift's counsel did not request a continuance ..."); *see also Berroyer v. Hertz*, 672 F.2d 334, 338 (3d Cir.1982). Mr. Sussman not only failed

to request a continuance, but characterized it as "useless." On the one hand, Mr. Sussman asserts that a continuance would not be helpful. On the other hand, he maintains that the delay has substantially prejudiced his client. In conjunction, these representations carelessly abandon the boundaries of reason and consistency.

The court has analyzed the four factors to consider when imposing discovery sanctions and finds that although the Government had no good reason for the discovery delay, there was no bad faith. The court also finds that Mr. Sussman's failure to request a continuance belies any claim of prejudice to Mr. Douglas. The court therefore rejects Mr. Douglas' claim of prejudice from the Government's discovery delay.

## B.  HEARSAY TESTIMONY

### 1.  Direct Examination

■  Mr. Sussman argues that the prosecutor elicited hearsay testimony (from Officer Moss) that area citizens had complained about narcotics activity in the 14th and Shepherd Streets, N.W. area.[10] Defendant's Motion at 8; Trial Transcript at 25–27. Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Although the testimony was hearsay, it was admissible under the particular circumstances.[11] Such out-of-court statements do not constitute hearsay when used to explain the origins of a police investigation. *United States v. Brown*, 923 F.2d 109, 111 (8th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 110, 116 L.Ed.2d 80 (1991); *United States v. Vizcarra–Porras*, 889 F.2d 1435, 1439 (5th Cir.1990), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2192, 109 L.Ed.2d 520 (1990); *United*

10.  In support of his claim, Mr. Sussman notes that the court sustained his objection to the testimony. Trial Transcript at 25–27. This observation provides no support for his contention, however, as the court's ruling was not mandated by the dispositive law.  See Section B.1.

11.  The Supreme Court has repeatedly held that hearsay statements which do not fall within a

firmly rooted hearsay exception are "presumptively unreliable and inadmissible for Confrontation Clause purposes." *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986). *See also Idaho v. Wright*, 497 U.S. 805, 818, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990); *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

*States v. Love,* 767 F.2d 1052, 1063 (4th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986); *United States v. Scott,* 678 F.2d 606, 612 (5th Cir. 1982), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 285 (1982).

The prosecutor elicited testimony regarding the citizen complaints in order to explain why the police investigation of Mr. Douglas began. *See* Trial Transcript at 25. The prosecutor was brief in his questioning and did not attempt to move beyond the limited purpose allowed by this exception.[12] The testimony was admissible. *See United States v. Gonzalez,* 967 F.2d 1032, 1034–35 (5th Cir.1992); *United States v. Lazcano,* 881 F.2d 402, 407 (7th Cir.1989); *United States v. Mancillas,* 580 F.2d 1301, 1309 (7th Cir. 1978), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). The court must, therefore, reject Mr. Douglas' contention of prosecutorial misconduct in this regard.

### 2. Summation Rebuttal

■ Mr. Douglas argues that the prosecutor improperly used this hearsay testimony (citizen complaints) during his summation rebuttal.[13] Defendant's Motion at 11; Trial Transcript at 155. The Supreme Court has declared that a defendant needs more than inappropriate prosecutorial comments to reverse his conviction. *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). The inappropriate comments must amount to prejudicial error within the context of the entire trial. *Id.* at 11–12, 105 S.Ct. at 1044–45. The court finds that Mr. Douglas' claims fails, even at the first inquiry.

Mr. Sussman's summation invited the prosecutor's reference to hearsay citizen complaints in his rebuttal summation. A prosecutor may respond to the arguments and evidence of the defense. *United States v. Robinson,* 485 U.S. 25, 33, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1988). Accordingly, in assessing a prosecutor's comments, "the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *Young,* 470 U.S. at 12, 105 S.Ct. at 1045; *see also Darden v. Wainwright,* 477 U.S. 168, 181–82, 106 S.Ct. 2464, 2471–72, 91 L.Ed.2d 144 (1986).

Mr. Sussman's summation portrayed the Government's investigation of Neil Douglas as random, baseless and almost dictatorial. The following excerpt captures the spirit of his argument:

> But there's another side about our government, and a side that you see all too often. It's the side of our government of what happens when the government turns against the citizen. *When the government targets someone, that's the danger of government* ...[14] And its pretty clear from the record that Gregory Moss is trained for a couple months, and *he's sent out on the street with a picture.* After two months of training he's told by the brass, by his superiors, he names a captain, a lieutenant up there, "Get me Neil Douglas." Get Neil Douglas. That's his job. *It's a dangerous situation to begin with when that's how we start an investigation* ...[15] [Gregory Moss is] part of the people who see things—he makes his conclusion before he starts. *"Neil Douglas is targeted and Neil Douglas is a dope dealer* ..."[16] (Emphasis added.)

The prosecution is entitled to respond to this "opening salvo," and that is precisely what Mr. McCool did:

> Johnson. Trial Transcript at 59. *See Johnson v. United States,* 344 F.2d 163, 164 (D.C.Cir.1964); *United States v. James,* 555 F.2d 992, 997 (D.C.Cir.1977).

---

**12.** Admittedly, the defense's objections may have shortened the prosecutor's inquiry. Nevertheless, there is no reason to believe, that the prosecutor intended to go any further than he did.

**13.** Mr. Douglas also argues that the prosecutor's introduction of statements made by Robert Johnson was improper. Defendant's Motion–I at 10. This contention is without merit. As the court noted at trial during a bench conference (Trial Transcript at 75–77), defense counsel "opened the door" to Officer Moss' exchange with Robert

**14.** Quoting at this point; Trial Transcript at 145.

**15.** Quoting at this point Trial Transcript at 147.

**16.** Quoting at this point Trial Transcript at 154.

And let's talk a little bit about how this whole thing got started, and let's be clear about a couple of things, okay? Let's not for an instant think that the testimony from that witness stand in any, shape or form suggested that captains and lieutenants in the Fourth District rode around up on Fourteenth and Shepherd, shot pictures of people, and said, "Okay, we're going to make these folks drug dealers, and we're going to go out and get them." Is that the testimony that came from that witness stand? What was the testimony? The testimony is, is the people out there at Fourteenth and Shepherd have had enough, all right? They've had it up to here with the drug dealers out there, and it's about time to stop. And what did they do? They complained. And it's their right to complain, because they pay taxes in this city, and those taxes fund that police department. And what can they expect for their tax dollars? They expect action.

Trial Transcript, 155.

■ The prosecutor's reference to the citizen complaints in the rebuttal summation served merely to address the defense's reference to the pictures and the argument that the police *randomly* targeted Mr. Douglas. The defense's summation invited the prosecutor's rebuttal, which did not stray beyond what was necessary to respond adequately to the defense argument. The rebuttal, therefore, was not improper.[17] *See United States v. Donovan*, 24 F.3d 908, 916 (7th Cir.1994); *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir.1991); *United States v. Flake*, 746 F.2d 535, 539–41 (9th Cir.1984), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985).

## C. REFERENCES TO JAMAICAN ANCESTRY

Mr. Douglas argues that the prosecutor's reference to his Jamaican ethnicity was prejudicial. Defendant's Motion at 9. Mr. McCool never actually referred to Mr. Douglas' ethnicity but asked a question eliciting testimony to that regard. Trial Transcript at 79. The relevant excerpt follows:

PROSECUTOR: And how about, as far as you know, is Mr. Douglas from that area?

OFFICER MOSS: No.

PROSECUTOR: Where is he—

OFFICER MOSS: As far as I know, he's not from that area. *He just moved there from Jamaica.* That's from—

MR. SUSSMAN: Objection. I want to approach that.

Trial Transcript at 79.

Mr. Douglas argues that this reference to his ethnicity was designed to exploit the publicity regarding Jamaican "drug posses" and their reputation for violence. Defendant's Motion at 9. Mr. Douglas claims that the Government's ostensible justification for the question (and ensuing testimony) was to establish that Officer Moss was trying to ascertain whether Mr. Douglas and Mr. Johnson were still in the area.[18] *Id.* at 8–9. The government argues that this testimony was isolated and stricken by the court, and thereby did not prejudice Mr. Douglas. Government's Opposition at 11.

■ Mr. Douglas' claim is a very serious and important one.[19] The Supreme Court has declared that "[d]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice." *Rose v. Mitchell*, 443 U.S. 545, 555, 99

---

**17.** The court needs not reach the question of whether the prosecutor's rebuttal was prejudicial. The first relevant inquiry is whether the prosecutorial comments were proper; the second inquiry is whether any *improper* comments amounted to prejudicial error. *See Young*, 470 U.S. at 11–12, 105 S.Ct. at 1044. If the defendant cannot satisfy the first inquiry, the court need not reach the second one. *See United States v. Monaghan*, 741 F.2d 1434, 1443 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985); *United States*

*v. Perholtz*, 842 F.2d 343, 361 (D.C.Cir.1988), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).

**18.** The Government has not provided this, or any, explanation as a justification for the specific inquiry.

**19.** "It is much too late in the day to treat lightly the risk that racial bias may influence a jury's verdict in a criminal case." *United States v. Doe*, 903 F.2d 16, 21 (D.C.Cir.1990).

S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979). Furthermore, the Constitution prohibits racially biased prosecutorial arguments. *McCleskey v. Kemp*, 481 U.S. 279, 309–310, 107 S.Ct. 1756, 1776–77, 95 L.Ed.2d 262 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *United States v. Cortes*, 949 F.2d 532, 541–42 (1st Cir.1991). The court has carefully considered the record in light of the dispositive case, *United States v. Doe*, 903 F.2d 16 (D.C.Cir.1990).[20]

■ In *Doe*, the prosecutor made repeated references to the defendants as "the Jamaicans." *Id.* at 18. His summation to the jury stressed the expert witness' thesis that Jamaicans had "taken over" the local drug traffic. *Id.* The court held that the prosecutor improperly appealed to the jurors' emotions by arguing that people "just like"[21] the defendants (Jamaicans) were controlling the cocaine market and that this shared nationality was relevant to the defendants' guilt or innocence. *Id.* at 24.

Racially inflammatory appeals by the government are unacceptable and mock any notion of racial fairness, which is "an indispensable ingredient of due process." *Id.* at 24–25. The prosecutor who makes such appeals ignores the primary purpose and chief business of his client: to establish justice.[22] Every prosecutor who makes a racial reference or comment, however, is not necessarily distorting the search for truth. *Id.* at 25. "An unembellished reference to evidence of race simply as a factor bolstering an eyewitness identification of a culprit, for example, poses no threat to purity of the trial. The line of demarcation is crossed, however, when the argument shifts its emphasis from evidence to emotion." *Id.*

The *Doe* court emphasized two factors which push prosecutorial comments over into the danger zone:[23] (1) the frequency level of improper comments and (2) the nature of the comments. *Id.* at 26–27. The *Doe* court chides the Government for portraying its own misconduct as "fleeting" and "insignificant,"[24] and rectifies this inaccuracy by pointing out several improper prosecutorial statements.[25] *Id.* at 27. The *Doe* court also suggests that the nature of the comment is pertinent and often determinative in assessing the magnitude of prejudice.[26] *Id.* Several other courts have held that the nature of the prosecutorial commentary is an important factor in assessing prejudice. *See United States v. Kirvan*, 997 F.2d 963, 965 (1st Cir.1993) (holding that the prosecutor's reference to the defendant as "Portuguese" was not inflammatory, but a permissible tool for describing the defendant); *United States v. Rodriguez Cortes*, 949 F.2d 532, 542 (1st Cir.1991) (holding that a card identifying the defendant as a native Colombian has an "inherently prejudicial nature").

When these factors (frequency and illegal nature) are present, courts have found prejudice. *See Rodriguez Cortes*, 949 F.2d 532. When they are absent, however, courts have often found no prejudice. *See United States v. Hernandez*, 865 F.2d 925, 927–28 (7th Cir. 1989) (reference to "Cuban drug dealers" was prosecutor's only reference to Cubans and, within context of the entire trial, it was not "so inflammatory as to prejudice the defendant."). *Accord United States v. Phibbs*, 999 F.2d 1053, 1079 (6th Cir.1993),

---

20. Although the cited cases deal specifically with race, their reasoning applies with equal force on the issue of ethnicity. "In legal theory, distinctions based upon ancestry are as 'odious' and 'suspect' as those predicated on race." 903 F.2d at 21–22.

21. 903 F.2d at 24.

22. Solicitor General Simon E. Soboleff addressed the Judicial Conference of the Fourth Circuit on June 29, 1954, and declared: "My client's chief business is not to achieve victory, but to establish justice."

23. 903 F.2d at 25 n. 63.

24. 903 F.2d at 26.

25. The court notes the frequency of the prosecutorial violations: "During the trial, the prosecutor frequently adverted to "the Jamaicans"—in his references to appellants as well as to others—and in summation to the jury he stressed Rawl's thesis that Jamaicans had "taken over" the local drug traffic ..." *Doe*, 903 F.2d at 18.

26. The court makes a distinction between racial references that are legally permissible and those that are not. *See Doe*, 903 F.2d at 25.

*cert. denied,* —— U.S. ——, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994). *See also Kirvan,* 997 F.2d at 965 (holding that there is no prejudice where the racial reference was for purposes of identification). The court finds neither factor in this case. The prosecutor's question (and the ensuing testimony), therefore, did not cross the line.

Mr. McCool asked *one* question eliciting testimony about Mr. Douglas' ethnicity. The frequency factor is, therefore, not an issue. It is, of course, difficult to imagine why Mr. McCool elicited this testimony at all.[27] If he was establishing that Mr. Douglas was not from the area, the point was already—and clearly—made. If he was emphasizing that Mr. Douglas was from Jamaica, this would smell of prejudice. *See Doe,* 903 F.2d at 26; *Brooks v. Kemp,* 762 F.2d 1383, 1413 (11th Cir.1985) (*en banc*), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986). The court finds no basis, however, to conclude that such was Mr. McCool's purpose.

The nature of Mr. McCool's question was plain, direct and harmless. Mr. McCool made no conclusions or arguments, and drew no inferences from the defendant's ethnicity. *See* 903 F.2d 16. His question was a legitimate one and the court has no basis to conclude that he had any ulterior, prejudicial motives. *See Kirvan,* 997 F.2d at 965. The court therefore finds that the nature of the

27. The Government's Opposition to the Defendant's Motion for a New Trial offers neither explanation nor illumination.

It may have been unwise for Mr. McCool to elicit this information, as it is potentially prejudicial and marginally beneficial (at best), but "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (quoting *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941)).

28. Furthermore, the court instructed the jury that they should not be improperly influenced by anyone's race, ethnic origin or gender, but should decide the case solely from a fair consideration of the evidence. Trial Transcript at 161. "An instruction such as this can be curative and temper any taint that might arise from a prosecutor's unfortunate remark." *Hernandez,* 865 F.2d at 928 n. 2 (citing *Darden v. Wainwright,* 477

question was not prejudicial to Mr. Douglas and in the absence of both primary factors (frequency and nature of comment), the court must reject Mr. Douglas' claim on this issue.[28] *Hernandez,* 865 F.2d 925; *Phibbs,* 999 F.2d 1053.

## D. ILLEGAL SEIZURE OF PHOTOGRAPHS

■ Mr. Sussman claims that the pictures of Mr. Douglas introduced at trial[29] were seized pursuant to an illegal seizure. Defendant's Supplemental Motion at 2–3. Mr. Sussman asserts that he learned of this illegal seizure only after the trial, which is why he could not argue the (illegal seizure) issue and possibly suppress the photographs. *Id.* Mr. Sussman contends that he has discovered new evidence which entitles him to a new trial.[30] *Id.* Several officers approached Mr. Douglas, as Mr. Sussman explains, and gave him the option of being "taken in" or having his picture taken (in connection with two alleged homicides). *Id.* at 2. When Mr. Douglas refused to be photographed, the officers detained him for some time. *Id.* Mr. Douglas later agreed to be photographed and was subsequently released. *Id.*

The law of this Circuit is clear on the mandates for a new trial based on newly discovered evidence. Five conditions must be met:

U.S. 168, 182, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986)).

29. These two photographs of the defendant were introduced as Exhibits Nos. 1 and 2. See Trial Transcript at 25–26.

30. See Defendant's Response to Government's Opposition at 5, October 26, 1993.

Mr. Sussman first argues that he learned of this alleged illegal seizure only *after* the trial. Defendant's Supplemental Memorandum, August 17, 1993, at 2. Mr. Sussman then portrays the issue as an extension of the (original) discovery violations and not as one of newly discovered evidence. Defendant's Response to Government's Opposition at 5. The court finds that logic forces Mr. Sussman to remain with his first formulation of the issue. Even if the court accepted Mr. Sussman's claim that this is an extension of the (original) discovery violations, Mr. Sussman would still be complaining about the alleged illegal seizure. Any evidence supporting this claim was discovered *after* the trial.

(1) The evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal. *Thompson v. U.S.*, 188 F.2d 652, 653 (D.C.Cir.1951). *Accord U.S. v. Sensi,* 879 F.2d 888, 901 (D.C.Cir.1989).

Mr. Douglas has failed to establish that the suppression of these photographs would have probably produced an acquittal. The government introduced the photographs in order to establish why Mr. Douglas became a targeted suspect. Trial Transcript at 26–27. Photographs shown to Officer Moss in order to initiate the investigation pale in the context of his three face-to-face encounters with Mr. Douglas.[31] Mr. Douglas' most cogent argument in support of a new trial is that if the defense had successfully suppressed the two photographs, "the case may well have had a very different flavor."[32] The law requires more than just a different flavor—it requires a whole new dish. *See Thompson,* 188 F.2d at 653. The court, therefore, cannot grant Mr. Douglas a new trial on this claim.

## IV. CONCLUSION

Mr. Douglas claims that the prosecutor's misconduct denied him a fair trial. Mr. Douglas bases this claim on four points: the (1) discovery delay, (2) introduction of hearsay testimony during direct examination and in the summation rebuttal, (3) improper references to the defendant's ethnicity, and (4) introduction, at trial, of evidence obtained pursuant to an illegal seizure. The charge of prejudicial prosecutorial misconduct is a very serious one, as a fair trial is essential to due process. The Supreme Court has made the point: "Society wins not only when the guilty are convicted but when criminal trials are fair." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963).

The court has carefully examined each claim in light of the record and has, indeed, found occasions of prosecutorial misconduct. Nevertheless, within the context of the entire trial, the prosecutorial impropriety does not amount to prejudicial error. Mr. Douglas' Motion for a New Trial based on prejudicial prosecutorial misconduct is DENIED.

---

**31.** Officer Moss met with Mr. Douglas on November 2, 10 and 16, 1993. Trial Transcript at 31, 34, 46. On November 10, 1993, Officer Moss purchased cocaine from Mr. Douglas. Trial Transcript at 40.

**32.** Defendant's Response to Government's Opposition at 5.